DOCUMENT ELECTRONICALLY FILED

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| CARYN LIEBERSON, On Behalf of | : | |
| Herself and All Others Similarly Situated,| : | Civil Action No. 10-cv-6196 (FLW)(DEA) |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **JOHNSON & JOHNSON CONSUMER** | : | |
| **COMPANIES, INC.,** | : | |
| | : | |
| | : | **RETURN DATE:  May 2, 2011** |
| **Defendant.** | : | |

_____

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

_____

James C. Shah
Natalie Finkelman Bennett
SHEPHERD,  FINKELMAN,  MILLER  &
SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone:  (856) 858-1770
Facsimile:  (856) 858-7012

[Additional Counsel Listed on Signature
Page]

Attorneys for Plaintiff and the Proposed
Class

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Complaint Satisfies FED. R. CIV. P. 12(b)(6)  . . . . . . . . . . . . . . 5

        B.      The Complaint Satisfies FED. R. CIV. P.  9(b)  . . . . . . . . . . . . . . . . 6

II.     PLAINTIFF AMPLY ALLEGES A VIOLATION OF THE NEW JERSEY CONSUMER
        FRAUD ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Plaintiff Alleges Defendant Engaged In Conduct Prohibited By The
                New Jersey Consumer Fraud Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      Plaintiff Sufficiently Alleges That She Has Suffered
                An Ascertainable Loss As A Result of Defendant's Unlawful
                Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.      Plaintiff Sufficiently Alleges That There Is A Causal Connection
                Between The Unlawful Conduct And Her Ascertainable Loss  . . . . 17

        D.      Defendant's Message Is Not Mere Puffery, But Is Instead An
                Actionable Statement Of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.    PLAINTIFF AMPLY ALLEGES A BREACH OF IMPLIED WARRANTY  . . . . . . . 21

IV.     PLAINTIFF HAS STANDING TO PURSUE ALL OF HER CLAIMS REGARDING
        BEDTIME BATH PRODUCTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.      PLAINTIFF SHOULD BE PERMITTED LEAVE TO AMEND IF THE COURT
        DEEMS THE COMPLAINT DEFICIENT IN ANY RESPECT . . . . . . . . . . . . . . . . . 26

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

## TABLE OF AUTHORITIES

### Cases

*Adamson v. Ortho-McNeil Pharm., Inc.,*
 463 F.Supp.2d 496 (D.N.J.2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bayside Chrysler Plymouth Jeep Eagle, Inc. v. Ma,*
 2006 WL 1449783 (N.J. App. Div. May 26, 2006)  . . . . . . . . . . . . . . . . . . . . . 9

*Bell Atlantic Corp. v. Twombly*,
 127 S.Ct. 1955 (2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Byrne v. Weichert Realtors*,
 290 N.J. Super. 126 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Castrol, Inc. v. Pennzoil Quaker State Co.,*
 169 F. Supp. 2d 332 (D.N.J. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chattin v. Cape May Greene,*
 216 N.J. Super. 618 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chavez v. Blue Sky Natural Beverage Co.*,
 268 F.R.D. 365 (N.D. Cal. 2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Clark v. McDonald's Corp*.,
 213 F.R.D. 198 (D.N.J. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cox v. Sears Roebuck & Co.*,
 647 A.2d 454 (N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*Dewey v. Volkswagen AG,*
 558 F. Supp. 2d 505 (D.N.J. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Elias v. Ungar's Food Prods.*,
   252 F.R.D. 233 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Foman v. Davis*,
   371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Franulovic v. The Coca-Cola Company*,
   2007 WL 3166953 (D.N.J., Oct. 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Furst v. Einstein Moomjy, Inc.*,
   860 A.2d 435 (N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Haas v. Pittsburgh Nat. Bank*,
   526 F.2d 1083 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Harper v. LG Electronics, USA, Inc.*,
   595 F. Supp. 2d 486 (D.N.J. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25

*Henderson v. Volvo Cars of North America, LLC*,
   2010 WL 2925913 (D.N.J. July 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hoffman v. Macy's, Inc.*,
   2011 WL 6585 (N.J.Super. A.D., June 28, 2010) . . . . . . . . . . . . . . . . . . . . 13

*In re Aetna Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*In re Bromine Antitrust Litig.*,
   203 F.R.D. 403 (S.D. Ind. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

iii

*In re Buspirone Patent & Antitrust Litig.*,
  185 F. Supp.2d 363 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Docteroff*,
  133 F.3d 210 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  2001 WL 1266317 (D.N.J. Sept. 30, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Toshiba America HD-DVD Marketing and Sales Practices Litig.*,
  2009 WL 2940081 (D.N.J. , Sept. 11, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*In re Westinghouse Securities Litig.*,
  90 F.3d 696 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kalow & Springnut, LLP v. Commence Corp.*,
  2009 WL 44748 (D.N.J. Jan. 5, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kaspirowitz v. Schering*,
  70 N.J.Super. 397 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Maguire v. Mohrmann*,
  935 A.2d 1259 (N.J. App. Div. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mann v. TD Bank, N.A.*,
  2010 WL 4226526 (D.N.J. Oct. 20, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Miller v. Am. Family Publ'rs*,
  663 A.2d 643 (N.J. Ch. Div. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14, 21

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
  331 F.3d 406 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*N.J. Citizen Action v. Schering-Plough Corp.,*
  842 A.2d 174 (N.J. App. Div. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Nelson v. Xacta 3000 Inc.,*
  2010 WL 19312151 (D.N.J., May 12, 2010) . . . . . . . . . . . . . . . . . . 9, 16, 18, 22

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
  998 F.2d 1192 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
  227 F.3d 489 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,*
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ramirez v. STI Prepaid, LLC,*
  644 F.Supp.2d 496 (D.N.J. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 14, 18

*Reyes v. McDonald's Corp.,*
  2006 WL 3253579 (N.D. Ill. Nov. 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Seville Indus. Mach. Corp. v. Southmost Machinery Corp.,*
  742 F.2d at 791 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Sheris v. Nissan North America, Inc.,*
  2008 U.S. Dist. LEXIS 43664 (D.N.J. June 2, 2008) . . . . . . . . . . . . . . . . . . . . . 22

*Skinner v. Switzer,* 09-9000,
  2011 WL 767703 (U.S. Mar. 7, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smajlaj v. Campbell Soup Co.,*
  2011WL 1086764 (D.N.J. Mar. 23, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

v

*Solo v. Bed Bath & Beyond, Inc.*,
  2007 WL 1237825 (D.N.J. Apr. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Southland Sod Farms v. Stoker Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Strzakowlski v. General Motors Corp.*,
  2005 WL 2001912 (D.N.J. Aug. 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Syncsort Inc. v. Sequential Software, Inc.*,
  50 F. Supp. 2d 318 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Talalai v. Cooper & Rubber Co.*,
  823 A.2d 888 (N.J. Law Div. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thiedemann v. Mercedes-Benz USA, LLC*,
  872 A.2d 783 (N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
  2008 WL 5381227 (D.N.J. Dec. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 18

*Union Ink Co. v. AT&T Corp.*,
  352 N.J.Super. 617 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 19

*V. Mane Fils S.A. v. International Flavors and Fragrance, Inc.*,
  2008 WL 2559354 (D.N.J. June 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zebersky v. Bed Bath & Beyond, Inc.*,
  2006 WL 3454993 (D.N.J. Nov. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## **Statutes**

  Fed. R. Civ. P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FED. R. CIV. P. 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

FED. R. CIV. P. 8  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

FED. R. CIV. P. 9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

New Jersey Consumer Fraud Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 15(a) of the Federal Rules of Civil Procedure  . . . . . . . . . . . . . . . . . . . . 26

## INTRODUCTION

Plaintiff, Caryn Lieberson ("Lieberson" or "Plaintiff"), respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss Amended Complaint filed by Defendant, Johnson & Johnson Consumer Companies, Inc.  ("J&J" or "Company" or "Defendant").  For the reasons explained fully below, the Court should deny the Motion to Dismiss in its entirety.

## SUMMARY OF ARGUMENT

The well pled claims in Plaintiff's Amended Class Action Complaint ("Complaint") clearly detail, *inter alia*, a knowing and intentional practice by which Defendant (1) marketed and sold bedtime bath products to Plaintiff and thousands of other consumers,  (2) using the labeling and advertising on the products to clearly state that the products themselves are clinically proven to help babies sleep better, when the products do not work as promised, and (3) the Company has no support for its claim that the use of the products, as opposed to using regular baby wash and lotion along with a night time routine, produced the results claimed.[1]

In the face of these allegations, Defendant would have this Court hold at the pleading stage that the conduct of the Company - an entity in the business of selling *products,* not routines - does not violate the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA" or "NJCFA") - which has been enacted to protect consumers from the very conduct alleged here by Plaintiff, or constitute a breach of implied warranty.  Defendant also asserts that Plaintiff failed to plead with specificity actionable conduct by the Company.  In furtherance of its efforts,

---

[1]In fact, illustrative of its lack of support for these claims about the Products is the fact that, Defendant, incredibly, contends that its representations are non-actionable puffery.

1

Defendant misstates and mischaracterizes Plaintiff's allegations and conveniently ignores the bulk of Plaintiff's Complaint.  Defendant then improperly seeks to have the Court adjudicate the recast allegations and, further, accept the Company's self-serving view of its clinical studies  to determine, as a matter of law at the pleading stage, the propriety of the Company's representations.  Finally, and perhaps most tellingly, recognizing that its actual representations are unsupportable, Defendant desperately, and unsuccessfully, attempts to retreat from its long-standing misrepresentations to Plaintiff and consumers and now asserts that its representations were something "less" or different than alleged by Plaintiff. As detailed below, notwithstanding the Company's transparent tactics, Plaintiff has adequately pled her claims and the Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS

This is a class action arising from Defendant's pattern and practice of fraudulently, unfairly, deceptively, and unlawfully packaging, marketing, promoting, and selling its JOHNSON'S® BEDTIME® Bath ("Bedtime Bath"), JOHNSON'S® BEDTIME® Moisture Wash™ ("Bedtime Moisture Wash"), JOHNSON'S® BEDTIME® Lotion ("Bedtime Lotion"), and JOHNSON'S® BEDTIME® Baby Bubble & Wash ("Bedtime Baby Bubble & Wash") (collectively, the "Bedtime Bath Products" or the "Product(s)").  Specifically, in an effort to capitalize on its research that over 75% of parents report a desire to change some aspect of their baby's sleep routine, Defendant instituted a comprehensive, nationwide advertising and marketing campaign in which it sought to convey one primary message: consumers should buy its Bedtime Bath Products because they help babies sleep better.  (Complaint ¶ 2.)

Defendant represented to Plaintiff and Class members on the front of a bottle, that its

Product is: "CLINICALLY PROVEN, HELP BABY SLEEP BETTER." (Complaint ¶¶ 1, 14-17.)  Defendant also states, on the back of a bottle, that it has created a "clinically proven" 3-step routine (using one of the Products it is selling) of a warm bath, gentle massage and quiet activities. (Complaint ¶¶ 1, 20.)   Defendant has, therefore, intentionally created the misleading and deceptive message that using the Bedtime Bath Products is clinically proven to help babies sleep better. (Complaint ¶¶ 4, 20.)  Further, Defendant uses numerous false and misleading representations and statements, disseminated through its advertising, that the Bedtime Bath Products have the following benefits: (1) "Releases NaturalCalm Essences;" (2) "help babies fall asleep easier;" and (3) "help[] babies...sleep through the night." (*Id.*, ¶ 1.)

Contrary to Defendant's representation, however, the Complaint alleges that the Products do not work as advertised.  (Complaint ¶¶ 27, 30.)  Specifically, Plaintiff alleges the Bedtime Bath Products have not been subjected to clinical tests which substantiate the claim that using the 3-step routine with the Bedtime Bath Products is any more effective in helping babies sleep better than using the 3-step routine without the Bedtime Bath Products, or even without any products at all.  (Complaint ¶¶ 3-4, 21.)  J&J makes the same material misleading statements and/or omissions about the Products on its website and other advertising materials.  (*Id.,* ¶ 23.)  For example, the Company's website states:

> Our new products, enriched with NATURALCALM™ essences,
> a unique blend of gentle ingredients and soothing aromas,
> can help your baby sleep better when used as part of
> a regular nightly routine. **JOHNSON'S® is the first and only
> brand that's clinically proven to help babies fall asleep easier
> and sleep through the night better. To learn more about our
> products,** visit JohnsonsBaby.com/sleep

http://www.johnsonsbaby.com/sites/default/files/sleep_baby_6-18m.pdf (emphasis supplied)

(*See id.*, ¶ 23).

In reliance upon the (a) commercials on television in and around January 2008, (b) printed magazine advertisements from *Baby Talk, Parenting* and *Parents* magazines in and around January 2008, and (c) the label of the bottles of the Bedtime Bath Products, Plaintiff purchased the Products (Bedtime Bath and Bedtime Lotion)[2] at a Shop Rite on Union Mill Road in Mt. Laurel, New Jersey, in January 2008.  (Complaint ¶ 26, 28-30.)  Plaintiff paid a premium of at least $1.00 in excess of the "non-Clinically Proven Help Baby Sleep products" such as Johnson's Baby Lotion.  (Complaint ¶¶ 4, 24.)  Based upon the same representations, as well as the "new and improved" statement on the Product, Plaintiff again purchased, at a premium, the Bedtime Bath and Bedtime Lotion at the Shop Rite on Union Mill Road in Mt. Laurel, New Jersey in January 2010.  (Complaint ¶¶ 4, 24, 28-30.)

As a result of Defendant's misrepresentations, Plaintiff and Class members have purchased Products they would not have otherwise purchased and/or substantially overpaid for the Products because they did not and do not perform as advertised.  On the basis of, *inter alia*, these allegations, the Complaint asserts causes of action against Defendant for violations of the CFA and breach of implied warranty.

## **ARGUMENT**

## I.    **STANDARD OF REVIEW**

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short

---

[2]Defendant is correct that there is a typographical error in the Complaint regarding the Product purchased by Plaintiff.  As was plead in her initial complaint, Plaintiff purchased the Bedtime Bath and Bedtime Lotion, not the Bedtime Moisture Wash. (Defendant's Brief in Support of Motion to Dismiss the Amended Complaint (D.I. 11-2) ("Def. Br.") at 20, n.5.)  If necessary, Plaintiff can amend the pleading to clarify this issue.

and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.

8(a)(2).  As the United States Supreme Court recently held, "Rule 8(a)(2) of the Federal Rules of

Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's

claim, not an exposition of his legal argument.  *See* 5 C. Wright & A. Miller, Federal Practice &

Procedure § 1219, pp. 277-278 (3d ed.2004 and Supp.2010)."  *Skinner v. Switzer*, 09-9000, 131

S.Ct. 1289, 2011 WL 767703, at *6 (U.S. Mar. 7, 2011).  Defendant moves to dismiss the

Complaint pursuant to both FED. R. CIV. P. 12(b)(6) and the heightened pleading standard of

FED. R. CIV. P. 9(b).  As set forth below, the Complaint satisfies both rules.

### A.      The Complaint Satisfies FED. R. CIV. P. 12(b)(6).

In order to survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a complaint

"does not need detailed factual allegations," but its "allegations must be enough to raise a right to

relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65

(2007).  Specifically, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 127 S. Ct. at 1974).  A claim "has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *(Id*.)  Because - as

set forth in more detail below - the Complaint readily meets this pleading standard, Defendant's

Motion to Dismiss pursuant to Rule 12(b)(6) should be denied.[3]

---

[3]On a motion to dismiss, the court can only properly consider the facts as alleged in the
complaint and any documents integral to, or explicitly relied upon in, the complaint.  *See In re
Burlington Coat Factory Sec. Litig.,*114 F.3d 1410, 1424-25, 1426 (3d Cir. 1997) (district court
was not permitted to consider affidavits submitted with motion ).  Moreover, "a court must
convert a motion to dismiss a summary judgment motion if it considers extraneous evidence

## B.        The Complaint Satisfies FED. R. CIV. P.  9(b).

Defendant also seeks to dismiss the NJCFA claim pursuant to FED. R. CIV. P. 9(b).  *See* Def. Br. at 15-29.  Rule 9(b) was not intended to require plaintiffs to allege every conceivable detail in order to plead fraud and does not require specificity just for specificity's sake.  *Smajlaj v. Campbell Soup Co.*, No. 10-1332, 2011WL 1086764, at *13-14 (D.N.J. Mar. 23, 2011). Rather, "[t]he purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim," *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003), and "allow a defendant to meaningfully respond to a complaint."  *In re Docteroff*, 133 F.3d 210, 217 (3d Cir. 1997).  A complaint satisfies Rule 9(b) when it puts "'the [D]efendant[s] on notice of the precise misconduct with which [they are] charged.'"  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) (quoting *Strzakowlski v. General Motors Corp.*, No. 07-4740, 2005 WL 2001912, at *6 (D.N.J. Aug. 16, 2005)).

In other words, "[t]o satisfy the specificity requirement of Fed.R.Civ.P. 9(b) the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss."  *Smajlaj*, 2011WL 1086764 at *13-14 (upholding similar NJCFA claims based on labels and product website) (quoting *Zebersky v. Bed Bath & Beyond, Inc*., No. CIVA 06-CV-1735 PGS, 2006 WL 3454993, at *4 (D.N.J. Nov. 29, 2006).[4]

_____

submitted by the defense" in order to "afford the plaintiff an opportunity to respond."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also* Fed. R. Civ. P. 12(d).

[4]Further, in *Harper v. LG Electronics, USA, Inc*., 595 F. Supp. 2d 486, 491 (D.N.J. 2009), Judge Hochberg found that a complaint satisfied Rule 9(b) where the plaintiffs alleged that the defendant "marketed defective washing machines as providing superior quality, and knowingly

Plaintiff can satisfy Rule 9(b) by any means that provides some measure of substantiation for her allegations.  As the Third Circuit explained in *Seville*:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Indus. Mach. Corp. v. Southmost Machinery Corp.*, 742 F.2d at 791 (3d Cir. 1984).  *See also Ramirez v. STI Prepaid, LLC,* 644 F.Supp.2d 496, 502-504 (D.N.J. 2009) (finding complaint satisfied Rule 9b and finding rigid requirements relaxed where circumstances of fraud were within defendant's control).[5]

Defendant's argument that the Complaint fails to detail the "who," "what," "why," "when" and "how" of its misconduct is woefully unpersuasive.  (*See e.g.,* Def. Br. at 15-29.) Notably, Judge Simandle rejected a similar argument in *Smajlaj*, 2011 WL 1086764, at *13-*14 (upholding allegations that the challenged conduct occurred between September 2009 and the

---

failed to disclose the defects in an attempt to sell more washing machines."  *See also Strzakowlski v. General Motors Corp*., Civ. No. 04-4740, 2005 WL 2001912, at *6 (D.N.J. Aug. 16, 2005) (holding that a defect in automobile sufficiently pleaded where plaintiffs alleged "the years during which GM sold defective K Engine vehicles").

[5]*See also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,* 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) (plaintiff adequately pled false advertising claims with particularity by alleging when the defendant introduced the drink product, how it was labeled, and what was misleading about the label); *Reyes v. McDonald's Corp.,* Nos. 06-C-1604, 06-C-2813, 2006 WL 3253579, at *2 (N.D. Ill. Nov. 8, 2006) (plaintiffs alleged Illinois consumer fraud claims with sufficient specificity under Rule 9(b) by alleging when they discovered the deception, that they read and relied on the nutritional information, that they would have moderated their consumption of the product had they known the truth, and that they were damaged thereby).

filing of the complaint and led to an ascertainable loss because plaintiff received less that what she thought she bought, and rejecting defendant's argument that allegations that plaintiff viewed the misleading statement on the website, which caused her to purchase the product, were insufficient under Rule 9(b)).  Plaintiff here has pleaded the who (J&J), the what (false and misleading labeling and advertising on the Products) the why (to profit and cause consumers to purchase its Products), the when (in January 2008 and 2010 as to the named Plaintiff specifically) and the how (caused consumers to pay a premium of at least a dollar more for the Products, which they otherwise would not have purchased).  No more is required.

## II.  PLAINTIFF AMPLY ALLEGES A VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

The goal of the CFA is to protect consumers against fraud and misleading practices in the sale of goods and services.  *Maguire v. Mohrmann,* 935 A.2d 1259, 1263 (N.J. App. Div. 2007). The CFA "should be construed liberally in favor of consumers."  *Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 461 (N.J. 1994).  It "is designed to protect the public even when a merchant acts in good faith."  *Id.*

To state a claim under the CFA, a private plaintiff must allege: (1) unlawful conduct by defendant; (2) an ascertainable loss; and (3) a causal relationship between defendant's unlawful conduct and the plaintiff's ascertainable loss.  *N.J. Citizen Action v. Schering-Plough Corp.,* 842 A.2d 174, 176 (N.J. App. Div. 2003); *see also Thiedemann v. Mercedes-Benz USA, LLC,* 872 A.2d 783 (N.J. 2005) (same).  The Complaint satisfies all three requirements.

### A.  Plaintiff Alleges Defendant Engaged In Conduct Prohibited By The New Jersey Consumer Fraud Act.

The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . .

N.J. Stat. § 56:8-2. "The conduct designated an unlawful practice, as listed in the CFA, is to be read 'in the disjunctive, ....[and] [p]roof of any one. . . will be sufficient to establish unlawful conduct under the Act." *Bayside Chrysler Plymouth Jeep Eagle, Inc. v. Ma,* No. A-3575-04T3, 2006 WL 1449783 (N.J. App. Div. May 26, 2006) (citation omitted).  Affirmative acts of unlawful conduct do not require a showing of knowledge and intent to deceive. *Cox,* 647 A.2d at 462.

To constitute consumer fraud, the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer. *New Jersey Citizen Action v. Schering-Plough Corp*., 842 A.2d 174, 177 (N.J. Super. Ct. App. Div.2003).  Here, Plaintiff has alleged that the Defendant made false and misleading representations on its packaging and labels regarding its Products' attributes and efficacy, and that Defendant knew but, intending to deceive consumers, failed to inform its customers that its Products were not clinically proven effective.  (Complaint ¶¶ 3-5, 12-25, 53-60.)  Defendant may contest these allegations, but the allegations clearly state a claim for unlawful conduct by Defendant in the form of affirmative acts and omissions.  *Nelson v. Xacta 3000 Inc.,* No. 08-5426 (MLC), 2010 WL 19312151, at *6 (D.N.J., May 12, 2010) (allegations that defendant made false representations of product efficacy satisfied unlawful prong of NJCFA); *Ramirez,* 644 F.Supp.2d

at 501 (allegations that defendant marketed calling cards in a misleading manner that failed to disclose all charges accompanying a prepaid calling card, accompanied by copy of the card, satisfied the unlawful prong of the NJCFA).

Defendant's arguments on this point do not withstand close scrutiny.  First, J&J asserts that its Products and advertising do not make the claims that Plaintiff alleges.  According to Defendant, its advertising labels that say "CLINICALLY PROVEN HELP BABY SLEEP BETTER" do not really mean that the Products are clinically proven, but merely mean that following the routine described elsewhere (which routine includes the Products with labels that say "CLINICALLY PROVEN HELP BABY SLEEP BETTER") helps a baby sleep better. Defendant, therefore, summarily declares that no reasonable consumer could possibly conclude from its marketing and labeling that the Product is clinically proven or that the Bedtime Bath Product is necessary to the routine.[6]  (*See* Def. Br. at 2, 8, 14.)   Next, Defendant unconvincingly spends pages arguing that its Product labeling and advertising is accurate and cannot be construed as being violative of the CFA.  (*See, e.g.,* Def. Br. at 8, 14 (Defendant never states that the Bedtime Bath Products, when used without the routine, "were clinically proven to help babies

---

[6]Defendant also improperly argues that the allegations that "Defendant knew that no clinical studies demonstrate that using the Bedtime Bath Products will help babies sleep better" and that "Defendant knew that no clinical studies demonstrate that using the Bedtime Bath Products with the 3-step routine is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products" (Complaint ¶¶ 53-54) somehow misconstrue Defendant's clinical studies and marketing in an attempt to make accurate factual statements appear inaccurate.  (Def. Br. at 6.)  This argument not only misconstrues the claims, it improperly attempts to interject Defendant's interpretation of its clinical studies, which is wholly improper at this procedural posture, before Plaintiff has had an opportunity to fully discover the scope of all of the studies.  *See Smajlaj,* 2011WL 1086764, at *3, *9 (court will not consider defendant's representations about issues in pleadings.)

sleep better").)[7]

Defendant's arguments amount to little more than a sleight of hand intended to divert the attention of the Court from the gravamen of Plaintiff's Complaint – Defendant's false and misleading advertising claims and labeling that suggest to consumers that J&J's higher priced Bedtime Bath Products are clinically proven to  help babies sleep better.  Defendant's argument utterly misses its mark because, even if the disclosures were literally true (which Plaintiff disputes) and contained accurate (if inadequate) disclaimers, the complete package can still be deemed misleading to a reasonable consumer.  *See, e.g., Miller v. Am. Family Publ'rs,* 663 A.2d 643, 653-54 (N.J. Ch. Div. 1995) (upholding claim even though "Defendant [was] correct that a careful, literal reading of the quoted language reveals that the words do not actually say what plaintiffs claim they are intended to convey").

Defendant relies heavily on this Court's decision in *Adamson v. Ortho-McNeil Pharm., Inc.,* 463 F.Supp.2d 496 (D.N.J. 2006), but that case is clearly distinguishable.  *Adamson* involved a class action against the manufacturer of Ortho Tri-Cyclen, an oral contraceptive, for intentionally misrepresenting and concealing that its product and another oral contraceptive, TriNessa, are identical drugs.  This Court ruled that the manufacturer had no duty to "inform the public that TriNessa and Ortho Tri-Cyclen are identical."  463 F. Supp.2d at 504.  The Court further ruled that none of the following statements made by the manufacturer were actionable

---

[7]Defendant correctly points out that Plaintiff's Complaint contains a typographical error in paragraph 17 by leaving out the letter "s" from the word "help."  If deemed necessary, Plaintiff can amend the Complaint to change the word "help" to "helps."  Defendant's other attempts to demonstrate that Plaintiff misquoted or failed to quote portions of the labels or advertising are entirely meritless as the Complaint, which should be read as a whole, clearly and accurately sets forth the text of the front and back of the labels, as well as of the advertising.  *Smajlaj,* 2011WL 1086764, at *14.

under the CFA:  1) TriNessa is "therapeutically equivalent" to Ortho Tri-Cyclen; 2) "Isn't it great

to find the one that's right for you?;" 3) "Myth: All birth control pills are the same.  Fact:  Not all

birth control pills contain the same type of hormones;" and 4) "The progestin in some birth

control pills may cause unpleasant effects."  *Id.* at 502-04.  That case is readily distinguishable,

however, because in *Adamson*, this Court held that the advertisements were not misleading

because they were accurate *and* the phrase "therapeutic equivalent" was commonly understood as

distinguishing between drugs.  *Id*. at 502.

In contrast, Plaintiff here unequivocally alleges that Defendant's representations that the

Products are clinically proven to help babies sleep better (than they would absent the use of the

Products in the three-step routine) are false and misleading.  *See Union Ink Co. v. AT&T Corp.*,

352 N.J.Super. 617, 645 (2002) ("Whether an advertisement is misleading presents a question of

fact in most cases").  The entire advertisement, which includes Product labels, should be viewed

as a whole, and not in isolation, as J&J attempts to do in its Motion to Dismiss.[8]  *See Miller,* 663

A.2d at 651-52.

_____

[8]Defendant's argument that its Product label was accurate and therefore cannot be the
basis of a CFA claim is similarly unavailing.  First, many key factual premises of Defendant's
argument rely on information outside the scope of this motion, including facts about what its
expert really meant by the article quoted in the Complaint.  Second, even if the disclosures were
literally true and contained accurate (if inadequate) disclaimers, the complete package can still be
misleading to a reasonable consumer.  *See, e.g., Miller,* 663 A.2d at 649, 653-54 (upholding
claim even though "Defendant [was] correct that a careful, literal reading of the quoted language
reveals that the words do not actually say what plaintiffs claim they are intended to convey" and
finding "a claim of literal truth will not constitute a defense to a charge that the overall
impression created by an advertisement is misleading and deceptive to an ordinary reader.");
*Union Ink Co., Inc. v. AT & T Corp*., 352 N.J.Super. at 645.  The CFA protects consumers from
unfair practices "even when, a merchant acts in good faith."  *Cox v. Sears Roebuck & Co.*, 647
A.2d 454, 461 (N.J. 1994).

Finally, the cases relied on by the Defendant do not support its arguments that there is no violation of the NJCFA.  In *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-cv-1057, 2008 WL 5381227 (D.N.J. Dec. 17, 2008), for example, the plaintiff had alleged "that Defendant's [pre-paid calling] cards 'virtually never provide the minutes advertised to consumers nor do they provide the minutes that the voice prompt indicates are available to the user." *Id*. at *1.  The court found that the plaintiff's complaint lacked the requisite specificity under Rule 9(b) because plaintiff had merely alleged that "'Defendant concealed, that the amount of minutes advertised are in excess of the actual amount of minutes a user of their cards can actually utilize' and a recitation of the NJCFA's statutory language" and did not allege the character of the marketing and advertising materials, *id*. at *6-*7, or which marketing or advertising materials allegedly misled him.[9]  The *Torres-Hernandez* court instructed the parties as to what would be necessary to satisfy Rule 9(b): "Hypothetically, Plaintiff's allegations would need to indicate specific misrepresentations, such as Defendant selling calling cards that specifically advertised that they contained 120 minutes when in fact Defendant knew the card would only provide 100 minutes worth of calling time for the cardholder." *Id*. at *6.

The Complaint in this case contains just the type of information this Court envisioned in *Torres-Hernandez,* including specific details regarding the Plaintiff's purchase of the Products

_____

[9]Defendant's reliance on *Hoffman v. Macy's, Inc.*, 2011 WL 6585 (N.J.Super. A.D., June 28, 2010), is similarly infirm.  Plaintiff challenged the department store's advertisement of "spectacular savings" and asserted that he bought an expresso machine based on defendant's statements that it was selling goods below regular price.  The court rejected plaintiff's claim and found no unconscionable business practice nor any factual support for the claim that defendant did not deliver on its promise of "discounted" price.  Here, Plaintiff's Complaint clearly sets forth more than the mere conclusions pled in *Hoffman.*

based on the advertising and labeling, and also contains excerpts from the labels and advertising. These allegations and others contained in the Complaint are sufficient to "inject [ ] precision and some measure of substantiation" into Plaintiff's allegations.  *See Seville Indus. Mach. Corp*., 742 F.2d at 791; *see also Ramirez,* 644 F.Supp.2d at 502-504 (finding complaint satisfied Rule 9b and finding rigid requirements relaxed where circumstances of fraud within defendant's control).

**B.      Plaintiff Sufficiently Alleges That She Has Suffered
An Ascertainable Loss As A Result of Defendant's Unlawful Conduct**

The CFA does not define "ascertainable loss" and there is no legislative history "that sheds direct light on those words." *Thiedemann,* 872 A.2d at 792 (citing *Furst v. Einstein Moomjy, Inc.,* 860 A.2d 435, 440-41 (N.J. 2004)).  Courts have held that "a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *Franulovic v. The Coca-Cola Company,* Nos. 07-539, 07-828, 2007 WL 3166953, at *7 (D.N.J., Oct. 25, 2007); *Thiedemann,* 872 A.2d at 792 (purchasers may characterize their ascertainable loss as the difference in value between product as advertised and the product as delivered). Ascertainable loss may include more than simply a defined monetary loss.  It may occur "when a consumer receives less than what was promised."  *Union Ink Co. v. AT&T Corp.,* 801 A.2d 361, 379 (N.J. App. Div. 2002); *Miller,* 663 A.2d at 655 ("For their money, they received something less than and different from what they reasonably expected in view of Defendants' presentations. This is all that is required to establish ascertainable loss.") (footnote omitted); *Talalai v. Cooper & Rubber Co.,* 823 A.2d 888, 898 (N.J. Law Div. 2001) ("When the product fails to measure up [to reasonable expectations based on the representations made], the consumer has been injured; he has suffered a loss.").  Finally, it is not necessary to plead a specific dollar amount to sufficiently plead

14

an ascertainable loss. *Torres-Hernandez,* 2008 WL 5381227, at *7, n.3.

Plaintiff here has adequately pled that she suffered an ascertainable loss. Specifically, she alleges that she purchased Defendant's Bedtime Bath Products believing that the Products were clinically proven to help a baby sleep and that she paid a premium of at least $1.00 for each bottle of Bedtime Bath purchased. (Complaint ¶¶ 4, 24, 26-31.) She further alleges that, had she known that there were no clinical tests proving that the use of the Bedtime Products, as opposed to other products, helped babies sleep better, she would not have purchased the Products, or would have purchased Defendant's lower priced regular baby lotion. (Complaint ¶¶ 24-25.) *See Kalow & Springnut, LLP v. Commence Corp.,* No. 07-3442, 2009 WL 44748, at *4 (D.N.J. Jan. 5, 2009) (plaintiff adequately alleged a CFA claim where plaintiff claimed that it would not have purchased the product if the defendant disclosed the defect at issue). Hence, Plaintiff's losses are ascertainable, quantifiable and measurable.

As recently as March 23, 2011, a court in this District, in an analogous situation, affirmed the common sense principle that plaintiff states a benefit-of-the-bargain claim under the NJCFA "if he or she alleges (1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference between the product promised and the one received can be reasonably quantified." *Smajlaj,* 2011WL 1086764, at *9 -*11 (benefit-of-bargain theory requires that consumer was misled into buying a product that was ultimately worth less to the consumer than the product she was promised). Plaintiffs in *Smajlaj* alleged that they paid 20 to 80 cents more for falsely advertised less-sodium tomato soup versus regular tomato soup. *Id.* at *12-*13. The court found that the determination of ascertainable loss was a simple matter and plaintiffs' approach to valuation presented "a specific and definite basis for assessing the difference in value between the

15

product promised and the one received." *Id*. at *13.  The same ascertainable loss at issue in *Smajlaj* is present here because Plaintiff paid a price premium of at least $1.00 for the Products based on the false advertising that they were "CLINICALLY PROVEN HELP BABY SLEEP BETTER," which is more than she would have otherwise paid for lotions or washes not claiming to have these purported benefits.  *See also Ramirez*, 644 F.Supp.2d at 501 (allegations that plaintiff received a fraction of what was promised sufficiently pled ascertainable loss); *Nelson*, 2010 WL 1931251, at *7 (allegations of purchase price of product sufficiently stated ascertainable loss).

       Indeed, Defendant recognizes that Plaintiff properly pleaded ascertainable loss, but weakly attempts to ignore these proper allegations by improperly labeling them as "unsupported and conclusory." (Def. Br. at 26).  Not so.  Moreover, the cases cited by Defendant in support of this argument are illustrative of its purposeful misreading of the Complaint and actually demonstrate how Plaintiff's Complaint, in contrast to those underlying the cases relied upon by Defendant, is properly pled.  For example, in *Solo v. Bed Bath & Beyond, Inc.,* No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007), the court found that, unlike here, plaintiff failed to allege that what he received was of lesser value than promised. Similarly, the court in *In re Toshiba America HD-DVD Marketing and Sales Practices Litig.,* No. 08-939, 2009 WL 2940081, at *13 (D.N.J. , Sept. 11, 2009), found that plaintiffs failed to plead where they purchased, what they paid, or that they suffered an ascertainable loss because they failed to allege "how much of a "premium" they claim to have paid or their HD DVD Players."  Here, in contrast, Plaintiff indisputably alleges that she received an item that was less than the premium Product that she expected (it did not work) and that the Product was purchased at a premium price of at least $1.00 more than Defendant's regular baby lotion. ( Complaint ¶¶ 2, 24-31.)  Thus, Plaintiff has properly pled an ascertainable loss.

16

**C.      Plaintiff Sufficiently Alleges That There Is A Causal Connection Between The Unlawful Conduct And Her Ascertainable Loss.**

The law is clear that causation under the CFA does not require detrimental reliance on the deceptive advertising.  Instead, consumers "merely need to establish a 'causal nexus' between the unlawful practice and the ascertainable loss."  *Mann v. TD Bank, N.A.*, Case No. 09-1062, 2010 WL 4226526, at *7 (D.N.J. Oct. 20, 2010).  In fact, "[a] practice can violate the [NJCFA] even though no one was misled or deceived as a result."  *Byrne v. Weichert Realtors*, 290 N.J. Super. 126, 136 (1996).  And despite Defendant's weak attempt to parse Plaintiff's allegations - the proper focus for the CFA claim is on whether Defendant made misrepresentations of material fact in its advertising and labeling.

"Regarding misleading product packaging, New Jersey law recognizes a rebuttable presumption that there is a causal relationship between defective product packaging and a purchaser's loss."  *Mann*, 2010 WL 4226526, at *7; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328, 328 (2011) ("Simply stated:  labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.").  The rebuttable presumption of causation under the CFA is particularly appropriate for deceptive packaging because "[a]ll purchasers are necessarily exposed to product packaging.  It is therefore reasonable to require a defendant to rebut the presumption that purchasers' losses were caused, to some degree, by misleading packaging."  *Mann*, 2010 WL 4226526, at *8; *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 249 (D.N.J. 2008) (presuming causation based on uniform statements that "reasonably could be said to have made a difference in

a decision to purchase the product").

In *Solo*, 2007 WL 1237825, at *4, the court held that plaintiff would have alleged causation if the plaintiff alleged that "[p]laintiff purchased the sheets in part because of the representation that the sheets were '1000 thread count,' or, that Plaintiff would not have purchased the sheets had they been labeled with the actual thread count."). *See also Franulovic*, 2007 WL 3166953, at *9-*10 (dismissing CFA claims because there were no specific allegations of causation or that plaintiff purchased the product because of certain advertising). Similarly, the *Torres-Hernandez* court identified what would be necessary to allege a "causal nexus" between the defendant's unlawful conduct under the NJCFA and the plaintiff's ascertainable loss, *i.e.*, "when [plaintiff] purchased his calling card(s), what he relied upon regarding the minutes he purchased and how many calling minutes he actually received." 2008 WL 5381227, at *7.[10]

Thus, Plaintiff here, who alleges that she was exposed to and purchased the Products because of the deceptive "clinically proven" message, easily satisfies the causation element under the CFA. *See Nelson*, 2010 WL 19312151, at *7 (causation adequately plead where the complaint alleged that plaintiff purchased in reliance on defendant's representations); *Ramirez*, 644 F.Supp.2d at 501 (allegations that plaintiff would not have purchased the product if there had been

---

[10]*Dewey v. Volkswagen AG*, 558 F.Supp.2d 505 (D.N.J.2008), is similarly unavailing. That case involved allegations that a vehicle had defective parts which led to flood damage within the vehicles. Defendant asserted plaintiff failed to the plead causation element of the consumer fraud claim with particularity. The court found that the causal nexus set forth in the omission claims satisfied Rule 9 while the misrepresentation claims did not because (unlike here) there were no allegations that plaintiffs ever saw any statements on the website or product manual. 558 F. Supp.2d at 526-27. The court specifically stated that a proper pleading of the causation element would include (as in the Complaint here) whether the fraudulent statements were on website when plaintiffs were deciding to purchase the product and whether any plaintiff saw the statements. *Id*. at 527, n.19.

18

proper disclosures stated causation).[11]

**D.      Defendant's Message Is Not Mere Puffery, But Is Instead An Actionable Statement Of Fact**.

Defendant is a large, sophisticated company that carefully devises, tests, and regularly modifies its marketing and promotional materials to convey particular messages.  Incredibly, in a desperate effort to avoid liability here, Defendant actually argues that the CLINICALLY PROVEN HELP BABY SLEEP BETTER message, which it has spent millions of dollars to communicate to consumers over numerous years, is mere puffery.  On the contrary, however, these representations are unequivocally actionable statements and not puffery.  "'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely . . . .'" *Southland Sod Farms v. Stoker Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).  Where a statement induces consumer reliance, it is not puffery.  *In re Aetna Sec. Litig.,* 617 F.3d 272, 284 (3d Cir. 2010). "[M]ere puffing does not induce reliance on its exaggerated claims."  *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 341 (D.N.J. 1999); *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1425 (3d Cir. 1997) (statements not important to reasonable persons are not actionable); *Miller*, 663 A.2d at 650 (statement of fact rather than exaggerated claims of quality are actionable).

Whether a reasonable consumer would be deceived by an advertisement, product label or advertising campaign is an issue for the trier of fact.  *See, e.g., Union Ink,* 352 N.J. Super. at 645

---

[11]In the face of Plaintiff's detailed allegations regarding her purchases, the alleged misrepresentations and the false and misleading advertising campaign, Defendant would seek to have this Court require even more specific pleadings.  On its face, this request is frivolous (indeed Defendant clearly understands the allegations enough to argue (albeit incorrectly) that the representations are non-actionable puffery).  In a word, Defendant's request is baseless, as the Complaint provides more than sufficient detail to satisfy any applicable pleading standard.

("Whether an advertisement is misleading presents a question of fact in most cases"); *Chattin v. Cape May Greene,* 216 N.J. Super. 618, 639 (1987).  Thus, because of the "basic legal principle" that a particular advertising statement must be considered within the context of the whole advertisement and advertising campaign, even general statements such as Papa John's slogan "Better Ingredients. Better Pizza'" are actionable statements of fact.  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 501-02 (5th Cir. 2000).[12]

Defendant unpersuasively attempts to highlight statements that are not at issue in the case, such as references to "no more tears" or tries to argue about the crucial placement of asterisks (*) apparently to divert attention from its main message and the statements upon which Plaintiff's claims are predicated, including "CLINICALLY PROVEN HELP BABY SLEEP BETTER" or "*Releases Naturalcalm™ essences."  Among other things, when read together, the latter statement, which links the Product to the claim of helping babies sleep, demonstrates that Defendant's conduct is clearly actionable.  *See Castrol, Inc. v. Pennzoil Quaker State Co.,* 169 F. Supp. 2d 332, 335-36 (D.N.J. 2001) (superiority claims linked to specific attributes of Pennzoil motor oil and/or testing "cannot be deemed mere puffery").

---

[12]One recent example is the Ninth Circuit's decision in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008).  There, parents of young children brought a consumer fraud and false advertising class action against a manufacturer of fruit juice snacks for toddlers, alleging that the product's packaging led consumers to believe that the product contained fruit juice, when it did not.  *Id.* at 936.  The district court granted the manufacturer's motion to dismiss, finding that the manufacturer's "statements were not likely to deceive a reasonable consumer, particularly given that the ingredient list was printed on the side of the box and that the 'nutritious' claim was non-actionable Puffery."  *Id.* at 937.  The Ninth Circuit reversed and held that the "nutritious" claim was not puffery and the message conveyed by the label was for the trier of fact to decide.  *Id.* at 939-40; *see also Byrne,* 290 N.J. Super. at 136 (alleged misrepresentation that a home's termite infestation was "minimal" should be juxtaposed with a representation that the house was "riddled" with termites).

Moreover, an advertisement is not a collection of unrelated random parts to be viewed in isolation.  To determine if advertising is likely to deceive, it must be viewed in its totality. Instructive of the futility of Defendant's arguments is the summary judgment decision in *Miller v. American Family Publishers*.  There, Plaintiff alleged that defendant (a magazine seller) utilized a sales campaign of "sweepstakes" offering million dollar prizes and used "mailings [to] fraudulently suggest that one has a better chance to win if one buys a magazine subscription than if one does not."  284 N.J. Super. at 72-73.  Plaintiff's allegations that defendant's plea and demand for an immediate response using statements such as "URGENT:…MAIL AT ONCE," that advising many sweepstakes participants that they are "FINALIST(S)!," and threatening to "drop" a participant from the sweepstakes if she does not subscribe to the defendant's magazine "are likely to mislead an average, reasonable consumer" and thus constituted a "prima facie violation of the [NJCFA]." *Id.* at 83.  In so concluding, the court found that "the entire tenor of defendant's promotional literature has the capacity to misleading."  *Id.* at 83, 87 (liability lies where "the overall impression created by an advertisement is misleading and deceptive to an ordinary reader"); *see also In re Aetna Sec. Litig.,* 617 F.3d at 284 (analyzing alleged misstatements "in context" to determine whether they were material or puffery).  Thus, the statements here cannot be passed off as mere puffery and Defendant's argument is without merit.

## III.   PLAINTIFF AMPLY ALLEGES A BREACH OF IMPLIED WARRANTY

New Jersey's Uniform Commercial Code provides the cause of action for breach of the implied warranty of merchantability, stating in relevant part:

> (1) [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind....
> (2) Goods to be merchantable must be at least such as ...

(c) are fit for the ordinary purposes for which such goods are used; and ...

(f) conform to the promises or affirmations of fact made on the container or label if any.

N.J.S.A. § 12A:2-314(1), (2)(c) & (f). Thus, in order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended. *Nelson*, 2010 WL 1931251, at * 8.[13]

Defendant argues, unpersuasively, that the Complaint fails to state a claim for breach of implied warranty. This argument is based entirely upon its willful misreading of the Complaint. Specifically, Defendant asserts that the Complaint is deficient because it fails to allege that the Products were defective or below a minimum level of quality. Defendant also asserts (by ignoring the Complaint's allegations concerning the content of its labeling and advertising) that since the "general purpose" of the Product is not a sleep aid, its failure to work as a sleep aid is beside the point. (Def. Br. at 36.) Neither argument is persuasive as they ignore, intentionally, Plaintiff's fundamental allegations.

As discussed at length above, Plaintiff has pled that the Defendant stated that the Products were clinically proven to help babies sleep better when they were not proven to have any such benefit. Plaintiff alleges that Defendant warranted the Products as such and, further, that the Products are not fit for the ordinary and intended purpose of helping babies sleep. ( Complaint ¶¶ 1, 14-21, 23, 24, 26-31, 66-68.) Plaintiff also alleges facts supporting her claim that the Products were not fit for the ordinary and intended purpose by unequivocally alleging that she tried the

---

[13]Merchantability does not mean that "the goods are exactly as the buyer expected, but rather the goods satisfy a minimum level of quality." *Sheris v. Nissan North America, Inc.*, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) (citing *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Nos. 96-3125, 96-1814, 96-3198 (JBS), 1997 U.S. Dist. LEXIS 24064, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997)).

Products but discontinued use as "the Bedtime Bath Products ... had no efficacy." (*Id.* at ¶¶ 27, 30.) These allegations directly address the representations made by Defendant on the packaging, and clearly allege a claim for breach of the implied warranty of merchantability. *See Nelson*, 2010 WL 1931251, at *8 (allegations that product did not work as advertised stated breach of implied warranty claim); *Henderson v. Volvo Cars of North America, LLC*, No. 09-4146, 2010 WL 2925913, at *9-*10 (D.N.J. July 21, 2010) (sustaining breach of implied warranty claim where plaintiff alleged that transmission problems made the vehicle not fit for the ordinary purpose of driving as the transmission problems could lead to a situation where the vehicle did not operate).

The cases Defendant relies upon do not support its argument. For example, *Kaspirowitz v. Schering*, 70 N.J.Super. 397 (1961), is legally and factually inapposite. That case affirmed the dismissal of plaintiff's case at trial after the close of evidence. Plaintiff alleged he sustained injuries as a result of use of a dandruff product, manufactured by defendant and given to plaintiff by a druggist without the required prescription. Plaintiff was aware that the drug was not to be dispensed without a prescription so the warning claim was not sustained. Further, the warranty claim was rejected because no warranty was given, as plaintiff did not receive any product information from the druggist, and (unlike here), there was no evidence of the product's promotion through advertising, which the court held cast doubt on the very existence of an implied warranty. *Id.* at 403. Defendant's reliance on *Toshiba*, 2009 WL 2940081, is similarly unavailing because, unlike in this case (where it is alleged that the Product did not help baby sleep better), the complaint in *Toshiba* contained no allegations that the HD-DVD players at issue were not able to be used to play HD DVDs. 2009 WL 2940081, at *17. Therefore, Defendant's challenge to Plaintiff's breach of implied warranty claim also fails.

IV.   **PLAINTIFF HAS STANDING TO PURSUE ALL OF HER CLAIMS REGARDING BEDTIME BATH PRODUCTS**

Defendant's half-hearted standing argument, that Plaintiff lacks standing to allege claims relating to Bedtime Bath Products she did not buy, (Def. Br. at 37), is without merit and should be rejected as a premature challenge to whether Plaintiff can satisfy the "typicality" requirement of Rule 23 and represent a class of purchasers of all of the Bedtime Bath Products at issue in this case.

Notably, Defendant does not cite a single legal authority that supports its argument.[14]   The only cases that Defendant cites (none of which arise at the motion to dismiss stage) merely stand for the uncontroversial proposition that a plaintiff must have suffered "injury in fact" or hold that, in determining class certification, issues of standing of the representative plaintiff may be relevant.   Here, Plaintiff suffered injury in fact (or ascertainable loss under the CFA) because she paid more for the Products than she would have paid absent the false and misleading advertisements.   (Complaint ¶¶ 26-31.)   Furthermore, Defendant ignores that Plaintiff alleges the same conduct with regard to all of the Bedtime Bath Products -  all of the Bedtime Bath Products are falsely labeled and advertised to give the impression that they help a baby sleep.   Defendant provides no authority for the premise that in order to satisfy the standing requirement against a defendant, the plaintiff would have to purchase every item in a product line manufactured and

---

[14]Defendant's citation to the dissenting opinion in *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003), a case involving an equal protection challenge to a race-conscious freshman admissions policy, is particularly perplexing and illustrative of the paucity of support for its position on this point.

advertised by the defendant making essentially the same false and misleading claims.[15]

Moreover, it is procedurally premature for Defendant to raise this argument, or for the Court to adjudicate it, on a Rule 12 motion.  *See In re Westinghouse Securities Litig.*, 90 F.3d 696, 718 n.22 (3d Cir. 1996) (named class action plaintiffs' standing, as to each of several separate defendants, not properly tested on a Rule 12 motion, but "might be relevant on a motion for class certification"); *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1088 (3d Cir. 1975) ("[e]ven though Haas herself does not have standing to challenge the service charge rate imposed on commercial transactions by Mellon Bank, summary judgment is inappropriate if Haas may represent a class of plaintiffs who do have standing"); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204-05 (D.N.J. 2003) (district court should not consider defendant's Rule 12 arguments in disability discrimination case that plaintiff lacks standing to assert class action claims regarding accessibility of restaurants he did not visit, or in states where he does not reside, until issue of class certification under Rule 23 is adjudicated) (citation omitted).  *See also In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp.2d 363, 377 (S.D.N.Y. 2002) (issue of class certification was logically antecedent to issue of plaintiff's antitrust standing, in proposed class action case where the named plaintiffs themselves bought only some, but not all, of the products on which overcharge damages were sought).[16]  Therefore, this argument has no merit and should be

---

[15]Indeed, this is not the law, as there is no indication that plaintiffs' complaint includes a purchaser of every type of tomato soup in the complaint sustained in *Smajlaj v. Campbell Soup Co.*, No. 10-1332, 2011WL 1086764, at *3, *9 (D.N.J. Mar. 23, 2011), nor does plaintiffs' complaint include a purchaser of every model of LG front loading washing machine in the complaint sustained in *Harper v. LG Electronics, USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009).

[16]Even when class certification is ultimately briefed at the appropriate time, Defendant's argument will fail because the "typicality" standard of Rule 23(a)(3) of the Federal Rules of Civil

rejected.

## V.    PLAINTIFF SHOULD BE PERMITTED LEAVE TO AMEND IF THE COURT DEEMS THE COMPLAINT DEFICIENT IN ANY RESPECT

Discovery has not begun in this case.  Plaintiff's independent investigation of the claims and causes of action is continuing, however, and additional facts supporting the claims continue to be collected.  As such, if the Court determines that Plaintiff's Complaint is, in any manner, deficient, which Plaintiff does not believe it is, Plaintiff respectfully submits that she should be permitted leave to amend the Complaint to cure any deficiencies. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given unless there is undue delay, bad faith, futility of the amendment, or prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also V. Mane Fils S.A. v. International Flavors and Fragrance, Inc.*, No. 06-2304, 2008 WL 2559354, at *2 (D.N.J. June 25, 2008) (Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted in the interests of justice).  Amendment of Plaintiff's Complaint, to the extent necessary, would not result in undue delay or prejudice.  As a result, should the Court find the Complaint deficient in any regard, Plaintiff respectfully requests leave to amend.

---

Procedure, is satisfied unless "the named plaintiffs' individual circumstances [are] markedly different or ... the legal theory upon which the claims are based differ[] from that upon which the claims of other class members will perforce be based."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citations and quotations omitted) (emphasis added); *see also Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 378 (N.D. Cal. 2010) (plaintiff's claims arose out of the allegedly false statement, worded in several variations, made on every Blue Sky container, and arise from the same facts and legal theory because plaintiff alleged that all the Blue Sky beverages bore substantially the same misrepresentation); *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 411 (S.D. Ind. 2001) (rejecting argument that representative plaintiffs were insufficient because they had not purchased four of the five products listed in the class definition).

26

## CONCLUSION

For all of the reasons stated above, Plaintiff respectfully requests that this Court

enter an Order denying Defendant's Motion to Dismiss in its entirety.

Dated: April 18, 2011

SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP

 /s/ Natalie Finkelman Bennett
James C. Shah
Natalie Finkelman Bennett
475 White Horse Pike
Collingswood, NJ 08107
Telephone:  (856) 858-1770
Facsimile:  (856) 858-7012
Email: jshah@sfmslaw.com
        nfinkelman@sfmslaw.com

James E. Miller
Karen M. Leser-Grenon
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
65 Main St.
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
        kleser@sfmslaw.com

Jayne A. Goldstein
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
1640 Town Center Circle
Suite 216
Weston, FL 33326
Telephone: (954) 515-0123
Facsimile: (954) 515-0124
Email: jgoldstein@sfmslaw.com

**Attorneys for Plaintiff and the Proposed
Class**

27