FOR PUBLICATION [11]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____  :
                                   :
CARYN LIEBERSON, on behalf of      :
herself and all others similarly situated,  :
                                   :
      Plaintiffs   :
                                   :          Civil Action No. 10-6196
      v.          :
                                   :               **OPINION**
JOHNSON & JOHNSON               :
CONSUMER COMPANIES, INC.,        :
                                   :
      Defendant    :
                                   :
_____  :

**WOLFSON, United States District Judge**:

      Presently before the Court is a motion by Defendant Johnson & Johnson Consumer

Companies, Inc. ("J&J" or "Defendant") to dismiss Plaintiff's Complaint for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6) and to dismiss certain allegations pursuant to Fed. R.

Civ. P. 12(b)(1) for lack of standing.  The instant motion arises out of an Amended Complaint

filed by Plaintiff Caryn Lieberson ("Lieberson" or "Plaintiff") on behalf of herself and a putative

class alleging violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq.

("NJCFA") as well as breach of the implied warranty of merchantability relating to the marketing

and efficacy of a line of baby bath products manufactured by Defendant.  Specifically, Plaintiff

alleges that Defendant made various misrepresentations and omissions concerning the baby bath

products that were deceptive and misleading and that Plaintiff has suffered damages as a result

1

thereof.  For the reasons set forth below, Defendant's motion is GRANTED; Count I of the Complaint is DISMISSED WITHOUT PREJUDICE and Count II of the Complaint is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

In addressing Defendant's Motion to Dismiss, this Court must accept as true the allegations contained in the Complaint.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir.2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1301 (3d Cir.1996).  Thus, the facts recited herein are taken from the Amended Complaint and do not represent this Court's factual findings.

In 2000, J&J launched a line of baby bath products comprised of  Johnson's Bedtime Bath, Johnson's Bedtime Moisture Wash, Johnson's Bedtime Lotion, and Johnson's Bedtime Baby Bubble & Wash (collectively, the "Bedtime Bath Products" or the "Products").  Compl. ¶¶ 1, 13.  The front label of each of the products, with the exception of the Bubble Wash, contains the following statement, "*Clinically Proven* Help Baby Sleep Better."  Id. ¶ 15.  In addition, each of the products, with the exception of the Bubble Wash, contains a statement on the back label that Defendant "has created a nightly routine that is clinically proven to help your baby fall asleep easier and sleep through the night better."  Id. ¶ 16; Tierney Aff. Exs. A, B, C.

Separately, the Bubble Wash contains the following statement on the front label, "help baby sleep better*."  Id. ¶ 17; Tierney Aff, Ex. D.  Unlike the other three products, the Bubble Wash does not include any references to clinical proof.  However, the Bubble Wash does advise using the product as part of a "3-step, nightly routine to help your baby sleep better."  Tierney Aff., Ex. D.

2

In or around January 2008, when her first child was four months old, Plaintiff purchased the Bedtime Moisture Wash and Bedtime Lotion at a Shop Rite in Mt. Laurel, New Jersey. Plaintiff alleges that she purchased these products after viewing television commercials and print advertisements for the Bedtime Bath Products as well as the Product labels themselves.  Compl. ¶ 26.  However, after using the Products "daily as part of a 3-step nightly routine for a few months," Plaintiff determined that neither the Products nor the "routine" helped her baby sleep better.  Compl. ¶¶ 27, 30.  Thereafter, in or around January 2010, when her second child was approximately four months old, Plaintiff alleges that she again saw television commercials and print advertisements for the Bedtime Bath Products, as well as the Product labels themselves, and that she purchased the Bedtime Moisture Wash and Bedtime Lotion for a second time. Compl. ¶ 28.  However, as with Plaintiff's first purchase, after using the Products, Plaintiff  again determined that neither the Products nor the "routine" helped her child sleep better.  Id. ¶ 30.

On or around November 24, 2010, Plaintiff filed an initial Complaint against J&J. Thereafter, on February 18, 2011, Plaintiff filed an Amended Complaint against J&J in which she alleges violations of the NJCFA and a breach of the Implied Warranty of Merchantability. Specifically, Plaintiff's NJCFA claim alleges that J&J made various misrepresentations concerning the Bedtime Bath Products that were disseminated through television commercials, printed advertisements, websites, materials and Product packaging.[1]  In addition, Plaintiff alleges

---

[1]Plaintiff's Complaint identifies the following nine alleged representations: (1) a claim that the Products are "clinically proven, Help Baby Sleep Better'); (2) a claim that NaturalCalm essences is a "unique blend that has been tested and proven to have relaxing properties"; (3) a claim that the Products are "part of a clinically proven 3-step, before-bed routine to help babies sleep better"; (4) a claim that customers will "Get a better night's sleep with Johnson's"; (5) "Johnson's Bedtime products with Naturalcalm essences are part of a 3-step nighttime routine

that J&J made certain omissions regarding the Products, and, specifically, that J&J did not

disclose the lack of clinical proof to support its claims regarding the Products' ability to help

babies sleep.  Compl. ¶¶ 18, 19, 21.  Based on these alleged misrepresentations and omissions,

Plaintiff contends that J&J marketed and sold the Bedtime Bath Products in a manner that made

consumers believe that the Products were "clinically proven to help babies sleep better and were

also part of a 'routine' that was clinically proven to help babies sleep better."  Compl. ¶ 52.

However, Plaintiff contends that this marketing was deceptive because no clinical studies existed

to support these claims.   Moreover, Plaintiff contends that if it were not for Defendant's alleged

misrepresentations and omissions regarding the Products' ability to help her babies sleep better,

she would not have purchased the Bedtime Bath Products.  Id. ¶ 61.  In addition, Plaintiff alleges

that J&J breached the implied warranty of merchantability because the Bedtime Bath Products

---

that is clinically proven to help babies and toddlers sleep better;" (6) "Dreamland awaits.
Johnson's Bedtime Bath is formulated with Naturalcalm essences – a special blend of calming
aromas.  Use this gentle cleanser for your baby's nighttime bath as part of a 3-step nightly routine
to help her sleep better;" (7) Johnson's Bedtime Bubble Bath and Wash combines Naturalcalm
essences with lots of bubbles and our No More Tears formula, extra gentle baby wash. Use it
with Johnson's 3-step, nightly routine to help your baby sleep better. Treat your baby to a warm
bubble bath using Johnson's Bedtime Bubble Bath Wash, then gently massage skin with
Johnson's Bedtime Lotion. End with quiet time to help your baby drift off to a better night's
sleep.;" (8) Did you know? A nightly routine that includes a warm bath using Johnson's Bedtime
Bath, followed by a massage with Johnson's Bedtime Lotion, and quiet time, is clinically proven
to help babies fall asleep easier and sleep through the night better;" and (9) "Use Johnson's
Bedtime Bath in a warm bath as part of our 3-step nightly routine, anytime you want to help your
baby sleep."  Compl. ¶ 23(a)- (I).  Importantly, the Court notes that although the Complaint
quotes the various alleged representations, Plaintiff has not identified where these statements
were made, i.e., whether they were made in a television commercial, printed advertisement,
website or on a product label, and Plaintiff has not attached copies of these alleged
misrepresentations.  Indeed, other than the Product labels which Defendant attached to the instant
motion – and which are properly considered on a motion to dismiss – the Court has no way to
determine where or when these statements were made.

were "not fit for the ordinary purpose for which they were advertised, in that they are not clinically proven to do anything."  Compl.¶ 67.

Defendant filed the instant Motion to Dismiss contending that Plaintiff's Complaint fails to satisfy the NJCFA because: (1) the statements upon which Plaintiff bases her claim are not misleading; (2) Plaintiff did not plead her fraud claim with sufficient particularity; (3) the statements upon which Plaintiff bases her claim are puffery and (4) Plaintiff suffered no ascertainable loss.  In addition, Defendant argues that Plaintiff's implied warranty claim must fail because the Products are fit for their ordinary purpose of cleansing and moisturizing babies' skin. Lastly, Defendant argues that Plaintiff lacks standing to pursue her claims as to certain of the Products.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends. . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a).  The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2004).

When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v.

5

County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell

Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6)

standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S.

41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual

allegations set forth in a complaint "must be enough to raise a right to relief above the

speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly

formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a

complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does

not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary

element'."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

        In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court

recently explained the following principles.  "First, the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal,

--- U.S. ----, ----, 129 S.Ct. 1937, 1949  (2009); Fowler v. UPMC Shadyside, 578 F.3d 203,

210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss."  Id. at 1950. The plausibility standard requires that "the plaintiff plead[ ]

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged" and demands "more than a sheer possibility that a defendant has

acted unlawfully."  Iqbal, 129 S.Ct. At 1949 (quoting Twombly, 550 U.S. at 556).  Ultimately, "a

complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION

### A. Standing

To bring a suit in federal court, the plaintiff must have standing pursuant to Article III of the United States Constitution. To establish standing under Article III, the plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir.2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  To establish an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 561.  In addition, "there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id.  Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id.

Importantly, and in relevant part, "[t]he injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 561.  The longstanding basic rule of third party standing is that "in the ordinary course, a litigant must assert his or her own legal rights and interests, and

7

cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991). Courts "apply this prudential rule against third party standing even when the requirements of Article III have been met, to 'avoid deciding questions of broad social import ... [and] to limit access to the federal courts to those litigants best suited to assert a particular claim.'" Id. (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100 (1979)). Moreover, "[t]he standing inquiry does not change in the context of a putative class action....[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." Koronthaly v. L'Oreal, Civ. A. No. 07-CV-5588, 2008 WL 2938045, at *4(D.N.J. July 29, 2008)(quotations omitted). As explained by the Supreme Court in Lewis v. Casey, 518 U.S. 343, 357 (1996), "[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quotations omitted).

In the instant motion, Defendant argues that Plaintiff lacks standing to pursue her claims regarding two of the four baby bath products – the Bedtime Bath and Bedtime Baby Bubble & Wash – because she did not allege that she purchased and used those products. Specifically, Defendant contends that the Complaint only alleges that Defendant purchased and used the Bedtime Moisture Wash and the Bedtime Lotion, Compl. ¶¶ 26, 28, and, as a result, that Plaintiff cannot establish standing to pursue a claim that products she neither purchased nor used did not work as advertised. The Court agrees. Because Plaintiff has not alleged that she purchased or used two of the four baby bath products at issue here, Plaintiff cannot establish an

injury-in-fact with regard to those products.  Indeed, as various courts have explained, a plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on "injuries suffered by other, unidentified members of the class."  <u>Lewis</u>, 518 U.S. at 357; <u>see also</u> <u>Koronthaly</u>, 2008 WL 2938045, at *4-5 ("standing cannot be predicated on an injury which the plaintiff has not suffered.").  Thus, the Court finds that Plaintiff's allegations regarding the Bedtime Bath and Bedtime Bubble Wash must be dismissed and, for purposes of this motion, the Court will only consider Plaintiff's allegations with regard to the Bedtime Moisture Wash and the Bedtime Lotion, the only products which Plaintiff alleges that she purchased and used. Compl. ¶¶ 26, 28.[2]

### B. Plaintiff's NJCFA Claim

The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

---

[2] The Court is dismissing the claims regarding the Bedtime Bath and Bedtime Bubble Wash without prejudice since an additionally named Plaintiff who claims injury from the purchase and use of these products may assert a claim regarding those products.  <u>See</u> <u>Coyle v. Hornell Brewing Co.</u>, Civil No. 08–2797, 2011 WL 3859731, *4 (D.N.J. Aug. 30, 2011) (dismissing named plaintiff based on an absence of qualifying purchases and holding that counsel could qualify as class counsel if they were able to find a suitable class plaintiff).

N.J.S.A. § 56:8-2.  The term "person" as used in the NJCFA includes, inter alia, natural persons, partnerships, corporations, companies, trusts, business entities and associations. N.J.S.A. § 56:8-1(d).

To state a prima facie case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss.  Payan v. GreenPoint Mortg. Funding, Inc., 681 F.Supp.2d 564, 572 (D.N.J.2010) (citing Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 964 A.2d 741, 749 (2009)).  Unlawful practices under the NJCFA fall into three general categories: affirmative acts, knowing omissions, and regulation violations. Frederico, 507 F.3d at 202 (quotation omitted).  Intent to defraud is not necessary to show unlawful conduct by an affirmative act of the defendant, but is an element of unlawful practice by knowing omission of the defendant.  See  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350 (1997);  Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec.17, 2008).

In the Complaint, Plaintiff alleges that, although J&J marketed the Bedtime Bath Products' ability to help babies sleep, this advertising was false and misleading because the Products were not clinically proven to help babies sleep better and Plaintiff was damaged as a result.   In response, Defendant argues that Plaintiff cannot establish a violation of the NJCFA for the following three separate reasons: (1) Plaintiff did not plead her fraud claim with sufficient particularity; (2)  the statements upon which Plaintiff bases her claim are not misleading;  and (3) the statements upon which Plaintiff bases her claim are puffery.

**1.  Pleading under Rule 9(b)**

First, Defendant argues that Plaintiff's NJCFA claim must be dismissed because she did not plead with particularity. It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). See, e.g., Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); Arcand v. Brother Intern. Corp., 673 F. Supp.2d 282 (D.N.J. Nov. 30, 2009). To satisfy this heightened pleading standard, a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Federico v. Home Depot, 507 F.3 188 (3d Cir.2007). Indeed, the Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany " 'the first paragraph of any newspaper story'-that is, the 'who, what, when, where and how' of the events at issue." In re Supreme Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir.2006) (citations omitted). A complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir.1998) (where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)").

Initially, Defendant argues that Plaintiff did not specifically plead unlawful conduct regarding the alleged misrepresentations and omissions concerning the Moisture Wash and Bedtime Lotion. To properly address Defendant's arguments, the Court will separately consider the alleged omissions and misrepresentations disseminated through television commercials, printed advertisements and websites on the one hand, and the Product labels, on the other.

First, with regard to omissions and misrepresentations made in commercials, print ads, websites or by any medium other than on the Product labels themselves, the Court notes that Plaintiff's Complaint generally identifies nine alleged statements concerning the Bedtime Bath Products as "deceptive, false and misleading." Compl. ¶ 23(a) - (I); see supra n. 1.  However, Plaintiff has not identified whether these statements were made in a television commercial, print advertisement, on a website or elsewhere.  Moreover, Plaintiff has not identified when these statements were made or whether and when Plaintiff actually viewed them.  Indeed, other than putting quotations around the alleged statements themselves, Plaintiff has provided absolutely no details concerning their origins or identity.

Further, although Plaintiff alleges that she "routinely read" various parenting magazines "including, for example, Baby Talk, Parenting and Parents magazines,"  Compl.  ¶¶ 26, 28, Plaintiff has nowhere alleged whether or when the advertisements quoted in the Complaint appeared in these magazines, nor has she alleged whether or when she viewed these advertisements in the various parenting magazines.   Thus, the Court finds that these allegations are patently insufficient to satisfy Rule 9(b).   See, e.g., Frederico, 507 F.3d at 200 ("Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' . . . . To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.")(quotations omitted).  As a result, the Court finds that Plaintiff has not sufficiently pled a NJCFA claim with regard to any misrepresentations or omissions made by Defendant and disseminated by way of television commercials, print advertisements, website or

any medium other than the Product labels themselves.

       Next, turning to the alleged misrepresentations and omissions made on the Product labels of the Moisture Wash and Bedtime Lotion, Defendant argues that Plaintiff has not sufficiently pled any of the requisite elements of a claim under the NJCFA.  Turning to the first prong, Plaintiff appears to allege unlawful conduct comprising both misrepresentations and omissions under the NJCFA.  First, Plaintiff alleges that Defendant made misrepresentations about the Products' ability to help babies sleep better.  Comp. ¶¶ 15 -18, 20, 52.  Specifically, Plaintiff contends that although the Product labels claimed that the Products were "clinically proven" to help babies sleep better, after using these Products with two of her children, she found that the Products did not, in fact, help her babies sleep better.  Id. ¶¶ 19 -21, 30-31.  In addition, Plaintiff alleges that Defendant made omissions since J&J  failed to disclose "that no clinical studies demonstrate that using the Bedtime Bath Products will help babies sleep better and that no clinical studies demonstrate that using the Bedtime Bath Products with the 3-step routine is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products."  Id.¶ 56.  In addition, with regard to the omissions, Plaintiff alleges that Defendants knew no clinical studies existed to substantiate their claims about the Products' ability to help babies sleep and that Defendants intended these misrepresentations to deceive consumers.  Id. ¶¶ 19, 21, 53, 54, 5, 58.  Moreover, although Plaintiff does not specifically allege when she viewed the Product labels, she does allege that the labels "reinforced" her decision to purchase the products.  Id. ¶¶ 26, 28.  Thus, it is fair for the Court to infer that Plaintiff saw the labels, at the least, at the time she purchased the Products.  For these reasons, the Court finds that Plaintiff has sufficiently plead unlawful conduct under the NJCFA.  See, e.g., Solo v. Bed Bath

& Beyond, Civ. No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (holding that

Plaintiff had adequately plead unlawful conduct under the NJCFA where Plaintiff alleged that

Defendant misrepresented, in its advertising and packaging, that the linens purchased by Plaintiff

had thread counts of at least double their actual thread counts).

 Moreover, to the extent that Defendant argues that the statements on the Product labels

are not actionable under the NJCFA because they are puffery, the Court does not agree.   "The

NJCFA distinguishes between actionable misrepresentations of fact and 'puffery.'"  In re Toshiba

America HD DVD Marketing and Sales Practices Litigation, Civ. No. 08-939, 2009 WL

2940081, at * 9 (D.N.J.  Sept. 11, 2009)(citing Rodio v. Smith, 123 N.J. 345, 352, 587 A.2d 621

(1991) (the slogan "You're in good hands with Allstate" was "nothing more than puffery" and as

such was not "a deception, false promise, misrepresentation, or any other unlawful practice

within the ambit of the Consumer Fraud Act"); see New Jersey Citizen Action v.

Schering–Plough Corp., 367 N.J.Super. 8, 13–14, 842 A.2d 174 (N.J.Super.App.Div.2003)

(finding that defendant's advertisements which employed phrases as "you ... can lead a normal

nearly symptom-free life again" were "not statements of fact, but are merely expressions in the

nature of puffery and thus are not actionable" under the NJCFA).  "Advertising that amounts to

'mere' puffery is not actionable because no reasonable consumer relies on puffery.  The

distinguishing characteristics of puffery are vague, highly subjective claims as opposed to

specific, detailed factual assertions."  In re Toshiba Am., 2009 WL 2940081, at * 10 (quoting

Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).  It has been noted in the context

of Lanham Act cases that, unlike puffery, "false claims that explicitly or implicitly address

product attributes of importance to customers and make statements that are measurable by

comparative research are not puffery." <u>Bracco Diagnostics, Inc., v. Amersham Health, Inc.</u>, 627

F. Supp. 2d 384, 464 (D.N.J. 2009) (citing <u>Castrol Inc., v. Pennzoil Co.</u>, 987 F.2d 939, 945–46

(3d Cir. 1993)(holding that Pennzoil's claim of superior engine protection was more than mere

puffery because "it is both specific and measurable by comparative research") and <u>Stiffel Co. v.</u>

<u>Westwood Lighting Group</u>, 658 F.Supp. 1103, 1115 (D.N.J.1987)(claims to superiority flowing

from purported independent tests, are more than puffery).

    In the instant matter, the Product labels touted that the Products were "clinically proven"

to help babies sleep better.  Thus, the labels did not just make vague or highly subjective claims

of simple superiority that could be considered puffery.  <u>See, e.g.</u>, Castrol, 987 F.2d at 945-46.

Indeed, in light of Defendant's incorporation of the words "clinically proven," the Court finds

that a statement that might otherwise be considered puffery, i.e., that the Products will help

babies sleep, was transformed into something that appears "both specific and measurable."  <u>Id</u>.

Thus, the Court finds that the Product labels are not mere puffery and, instead, that the Product

labels are actionable under the NJCFA.[3]

    Next, Defendant argues that Plaintiff has not plead an ascertainable loss sufficient to

---

[3]    In addition, false claims are not excused or remedied by the use of footnotes because "a footnote or disclaimer that 'purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims." <u>SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharm. Co.</u>, 906 F.Supp. 178, 182 (S.D.N.Y.1995) (citing <u>Am. Home Prods. v. Johnson & Johnson</u>, 577 F.2d at 167); McNeilab, 654 F.Supp. 568, 590 (S.D.N.Y.1987), <u>aff'd</u>, 100 F.3d 943 (2d Cir.1996); <u>Cuisinarts, Inc. v. Robot–Coupe Int'l Corp.</u>, 509 F.Supp. 1036, 1044 (S.D.N.Y.1981).  Here, the Court notes that although the Product labels include asterisks around the words "clinically proven" that could potentially refer to a footnote or other explanation, upon further review of the labels, the Court could not find a reference to an explanation on the label or elsewhere.

establish a cause of action under the NJCFA.   "The certainty implicit in the concept of an

'ascertainable' loss is that it is quantifiable or measurable." Thiedemann v. Mercedes–Benz

USA, LLC, 183 N.J. 234, 872 A.2d 783, 792 (2005).  With respect to this second element a

plaintiff must establish, "[a] sufficiently [pled] ascertainable loss ... with enough specificity as to

give the defendant notice of possible damages." Torres–Hernandez, 2008 WL 5381227, at *7,

2008 U.S. Dist. LEXIS 105413, at *19.  Indeed, as one court in this District recently explained,

"what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to

quantify the difference in value between the promised product and the actual product received."

Smajlaj v. Campbell Soup Company, Civ. No. 10-1332, 2011 WL 1086764, at * 9 (D.N.J.

March, 23, 2011).

      In the instant matter, Plaintiff alleges that she has "suffered an ascertainable loss"

because the Products "did not and do not perform as Defendant claims."  Compl. ¶ 31.  In an

attempt to quantify her loss, Plaintiff alleges that J&J "charges a premium of at least $1.00" for

the Products, Compl.¶ 4, and that comparable products "cost at least twenty-five (25%) less" than

those manufactured by Defendant.  Id. ¶ 24.  However, other than these unsupported conclusions

concerning her alleged loss,  Plaintiff has not provided any specificity which would give

Defendant notice of the possible damages.  Indeed, Plaintiff has not alleged the price she paid for

the Products in either 2008 or 2010, nor has she alleged the price of the Products generally.

Moreover, although Plaintiff alleges that comparable products cost twenty five percent less than

the J&J products, Plaintiff has not alleged the identity or the cost of any allegedly comparable

products.  Thus, the Court is unable "to quantify the difference in value between the promised

product and the actual product received."  Smajlaj, 2011 WL 1086764, at *4.  As a result, the

Court finds that absent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss.[4]   For these reasons, Plaintiff's claims under the NJCFA are dismissed without prejudice because it is conceivable that Plaintiff could plead ascertainable loss with sufficient specificity.

### B. Plaintiff's Claim for Implied Warranty of Merchantability

In addition, Plaintiff alleges that J&J breached the implied warranty of merchantability because the Products were "not fit for the ordinary purpose for which they were advertised" since they did not help her babies sleep better.  Compl. ¶ 67.  In response, Defendant argues that this claim must be dismissed because the Complaint "is barren of any allegation that the subject soaps and lotion are not fit for their ordinary purpose of cleansing and moisturizing babies' skin." Def's Br. At 32.  The Court agrees.

"'Merchantability' requires that a product conform to its ordinary and intended use." Hughes v. Panasonic,  Civ. A. No. 10-846,  2011 WL 2976839, at * 22 (D.N.J. July 21, 2011) (quoting Berenblat v. Apple, Inc., 2009 WL 2591366, at *2 (N.D.Cal. Aug.21, 2009)).   "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended."  In re In re Toshiba Am. HD DVD Marketing and Sales Practices Litigation, Civ. No. 08-939, 2009 WL 2940081, at * 16

---

[4]Because the Court is dismissing Plaintiff's NJCFA claim for failing to sufficiently plead the second prong of an NJCFA claim, the Court need not consider the third prong, i.e., whether Plaintiff has alleged a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss.

(D.N.J. Sept. 11, 2009).  "The implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'"  Hughes, 2011 WL 2976839, at * 22 (quoting Berenblat, 2009 WL 2591366, at *3).  Indeed, the warranty of merchantability "'simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold.' " Ferrari v. American Honda Motor Co., Inc., 2009 WL 211702, at *3 (N.J.App. Jan. 30, 2009) (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370, 161 A.2d 69 (1960)(emphasis added). Stated differently, merchantability is defined as the product sold "'should be of the general kind described and reasonably fit for the general purpose for which it should have been sold.' " Id. (quoting Adams v. Peter Tramontin Motor Sales, Inc., 42 N.J.Super. 313, 321, 126 A.2d 358 (N.J.App.Div.1956))(emphasis added).  Courts typically find goods to be unfit for their ordinary purposes "when they can identify one of three general types of defects: manufacturing defects, design defects, and failure to give the buyer proper instructions with respect to the goods. This tripartite test for defects is essentially the same as that required when the theory is strict tort liability under Section 402A of the Restatement (Second) of Torts, except that goods may violate [the implied warranty of merchantability] without being "unreasonably dangerous," as is generally required under strict tort."  Barkley Clark & Christopher Smith, THE LAW OF PRODUCT WARRANTIES §5.5 (2010).

Initially, because merchantability only requires "that the thing sold [be] reasonably fit for the general purpose for which it is manufactured and sold," the Court finds it appropriate to consider the "general" purpose of the Products.  Ferrari v. American Honda Motor Co., Inc., 2009 WL 211702, at *3 (N.J.App. Jan. 30, 2009) (quoting Henningsen v. Bloomfield Motors,

Inc., 32 N.J. 358, 370, 161 A.2d 69 (1960)(emphasis added).  The Products at issue here are clearly manufactured for the purpose of washing and moisturizing babies' skin.  Despite Plaintiff's argument that the general purpose of the Products was to function as a sleep aid, neither the Complaint nor the attached documents show that the general purpose of the Baby Bath Products is anything other than to wash and moisturize.  Indeed, although the Products may have been advertised as helping babies sleep, such advertising alone can not transform the "general" purpose of soap and lotion into something entirely unrelated.

Moreover, with respect to the tripartite test for determining whether a product is not fit for its ordinary purpose, the Court finds that the first two categories – manufacturing defect and design defect – may be relevant to the matter at hand.[5]   Barkley Clark & Christopher Smith, THE LAW OF PRODUCT WARRANTIES §5.5 (2010).   Specifically, with regard to a manufacturing defect, a "breach of the warranty of merchantability may occur whether the goods contain one big manufacturing defect such as a faulty transmission, or a multitude of smaller defects that, in sum, render the goods virtually unusable, as is more typical of products such as mobile homes. In either case, the manufacturing glitch separates the unit in question from other units of the same class, thus making the goods not fit for their ordinary purposes." Id.  Applied to the matter before me, it is clear that Plaintiff has not alleged a manufacturing flaw.  Indeed, nothing in the Complaint suggests that a manufacturing glitch rendered the Bath Products used by Plaintiff unfit and separate from the other units of the same class.   Thus, Plaintiff cannot

---

[5]The third category of the tripartite test – the  failure to give the buyer proper instructions with respect to the goods – is not at issue in this case since nothing in the Complaint alleges or suggests that J&J failed to give Plaintiff proper instructions with respect to the goods.

establish a claim for breach of implied warranty of merchantability based on a manufacturing defect.

Further, with regard to the second type of defect, a design defect occurs when "all goods in the class are unfit for their ordinary purposes."  Barkley Clark & Christopher Smith, THE LAW OF PRODUCT WARRANTIES §5.5 (2010).   In a design defect case under New Jersey law, "the ultimate inquiry is whether the manufacturer acted in a reasonably prudent fashion in designing and fabricating the product."  Leslie v. U.S., 986 F. Supp. 900, 907 (citing Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 50 (1996)).  Thus, to state a prima facie case under a design-defect theory, a plaintiff must show that: (1) the product was defective; (2) the defect existed when the product left the manufacturer's control; and (3) the defect caused injury to a reasonably foreseeable user or victim.  Zaza, 144 N.J. at 49, 675 A.2d 620; Jurado v. Western Gear Works, 131 N.J. 375, 385, 619 A.2d 1312 (1993).  Indeed, liability for a design defect may only be imposed where the manufacturer is responsible for the defective condition.  Id.

In the instant matter, although the Complaint suggests that the Baby Bath Wash and Moisture Lotion were not fit for their ordinary purpose since they did not help her babies sleep, Plaintiff has not alleged that the Product was defective.  Indeed, Plaintiff has not suggested that the Wash did not wash nor that the Lotion did not moisturize.   Instead, Plaintiff merely alleges that the Products did not comport with advertising on the label which stated that the Products were "clinically proven" to help babies sleep better.  Moreover, although the Products may not have helped Plaintiff's children sleep, the Court notes that Plaintiff has not alleged that no parents had success with the Products as sleep aids, thereby rendering impossible the idea that the Products contained a design defect.  See Barkley Clark & Christopher Smith, THE LAW OF

20

PRODUCT WARRANTIES §5.5 (explaining that a design defect occurs when "all goods in the class are unfit for their ordinary purposes.").

Finally, the Court notes that this matter is easily distinguishable from Nelson v. Xacta 3000, Inc., Civ. A. No. 08-5426, 2010 WL 1931251, at * 8-9 (D.N.J. May 12, 2010).  In Nelson, the court denied defendants' motion to dismiss a breach of implied warranty claim concerning footpads which purported to remove toxins from the body.  There, the court held that because the ordinary purpose of the foot pads was to "remov[e] toxins and impurities from the body," and because the footpads did not perform this function, the complaint stated a plausible breach of implied warranty claim.  Unlike Nelson, in the instant matter, Plaintiff has not alleged that the Moisture Wash and Lotion did not cleanse or moisturize.  Instead, Plaintiff alleges that the Wash and Lotion did not function as sleep aids.  Thus, Plaintiff's implied warranty claim hinges entirely on the fact that the Product label also stated that the Products were clinically proven to "help babies sleep better." However, Plaintiff has cited no case law to support the idea that advertising alone, no matter how deceptive, may transform the clear and ordinary purpose of a product into an entirely different and unrelated purpose.  Indeed, the Court notes that Plaintiff appears to be attempting to fit the square peg of a false advertising or consumer fraud type claim into the round hole of an entirely unrelated warranty claim.  This Plaintiff cannot do.

In short, even accepting Plaintiff's allegations as true, the Court finds nothing in the Amended Complaint to allege that the Bath Products  were not fit for their ordinary purpose of cleansing and moisturizing babies' skin.  See, e.g., Laney v. American Standard Companies, Inc., 2010 WL 3810637, at *11 (D.N.J. Sept.23, 2010) (in dismissing Plaintiff's implied warranty of merchantability claim, the court found that although some of the toilets at issue leaked, the "facts

do not demonstrate that Laney's toilets were unfit for their 'ordinary purpose,' which is to discard waste into the sewer or septic system."); Sheris v. Nissan N. Am. Inc., 2008 WL 2354908, at *5–6 (D.N.J. Jun.3, 2008) (in finding that the allegedly defective vehicle was "merchantable," court concluded that, despite the plaintiff's allegation that the brake pads were not of the quality required at the time of purchase and the defendant had knowledge of such a defect, the vehicle's ordinary purpose was to provide safe transportation, which it did at the time of sale); Toshiba Am., 2009 WL 2940081, at (in dismissing the plaintiffs' implied warranty claim, court determined that the plaintiffs did not allege that the HD DVD players at issue could not still play HD DVDs).  Thus, Plaintiff cannot establish a claim for breach of implied warranty of merchantability and the Court will grant Defendant's motion to dismiss Count II with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  Specifically, the Court dismisses Count I of Plaintiff's Complaint without prejudice and dismisses Count II of Plaintiff's Complaint  with prejudice.  An order will be entered consistent with this Opinion.

Dated: September 21, 2011                    /s/ Freda L. Wolfson
                                            Freda L. Wolfson, U.S.D.J.