UNITED STATES DISTRICT COURT          1
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 10-6196 (FLW)


_____   :
CARYN LIEBERSON, etc.,           :
                                 :   TRANSCRIPT OF
          Plaintiffs,            :
                                 :   MOTION
      v.                         :
                                 :   JUNE 28, 2012
JOHNSON & JOHNSON CONSUMER        :
COMPANIES, INC.,                 :
                                 :
          Defendant.             :
_____   :



CLARKSON S. FISHER UNITED STATES COURTHOUSE
402 EAST STATE STREET, TRENTON, NJ  08608


B E F O R E :  THE HONORABLE FREDA L. WOLFSON, USDJ


A P P E A R A N C E S :


  SHEPHERD, FINKELMAN, MILLER & SHAH, ESQUIRES
  BY:  JAMES C. SHAH, ESQUIRE
       NATALIE FINKELMAN BENNETT, ESQUIRE
  On behalf of the Plaintiffs


  McCARTER & ENGLISH, ESQUIRES
  BY:  DAVID R. KOTT, ESQUIRE
       SARA F. MERIN, ESQUIRE
  On behalf of the Defendants



          * * * * *
     VINCENT RUSSONIELLO, C.C.R.
     OFFICIAL U.S.COURT REPORTER
  138 PAXSON AVENUE, TRENTON, NEW JERSEY
          (609)588-9516

2

# C E R T I F I C A T I O N

       PURSUANT TO SECTION 753, TITLE 28, USC, THE
FOLLOWING TRANSCRIPT IS CERTIFIED TO BE AN ACCURATE
TRANSCRIPTION OF MY STENOGRAPHIC NOTES IN THE
ABOVE-ENTITLED MATTER.


                                  S/Vincent Russoniello
                                  VINCENT RUSSONIELLO, CCR
                                  OFFICIAL U.S. COURT REPORTER

**I N D E X**                                                          3

**Proceedings**                                          **Page**


Discussion re

    "New and improved" moniker                       6

        By Mr. Shah                               7

        Ruling by the Court                       9

    "Ascertainable loss"                             10

        By Mr. Kott                              11

        Ruling by the Court                  13, 14

    Advertising                                      14

        By Mr. Shah                          14, 16

        Ruling by the Court                  17, 18

4

```
 1              (In open court.)

 2              THE CLERK:  All rise.

 3              THE COURT:  Thank you.

 4              I'll have the appearances.  Everyone else may

 5     be seated.

 6              MR. SHAH:  Good morning, your Honor.

 7              James Shah, Shepherd, Finkelman, Miller &

 8     Shah, on behalf of the plaintiff, Ms. Lieberson.

 9              MS. FINKELMAN:  Natalie Finkelman, Shepherd,

10     Finkelman, Miller & Shah, on behalf of the plaintiff.

11              MR. KOTT:  David Kott, K-O-T-T, McCarter &

12     English, LLP, for the defendant.

13              MS. MERIN:  Sarah Merin, McCarter & English,

14     for the defendant.

15              THE COURT:  Thank you.  Have a seat.

16              Who is going to be arguing for each side?

17              MR. KOTT:  I will for the moving party.

18              MR. SHAH:  I will for the plaintiff.

19              THE COURT:  All right.

20              The next time around on this pleading.

21              I have some questions for you.

22              First of all, at this point, now, while your

23     complaint references all four products, Mr. Shah,

24     you've made clear that you are only pursuing on behalf

25     of Ms. Lieberson two of the products.
```

5

1          MR. SHAH:  That's correct, your Honor.

2          THE COURT:  I think it had been misnamed at

3    one point, a typographical error, but what we've

4    really got is the Bedtime Bath product and the lotion.

5          Is that right.

6          MR. SHAH:  That's correct, your Honor.

7          THE COURT:  And those are the two.

8          Out of curiosity, Mr. Shah, because I know

9    that this is a putative action, you are not going to

10   be pursuing any of those other products for the class.

11         MR. SHAH:  At this time, we are not, your

12   Honor.

13         THE COURT:  Okay.

14         I'm going to have some discussion with you

15   people at some point, too, and I'll do it after our

16   argument, as to whether you are really going to have

17   an appropriate class representative in this case.

18   I'll address that later on.  That's not the motion

19   before me today.

20         But you are still pursuing the label based on

21   purchases that Ms. Lieberson made in the 2008 and 2010

22   time period, and you are pursuing this advertising in

23   the form of internet advertising, print, as well

24   as TV.

25         MR. SHAH:  As well as the television ads.

6

1    That's correct, your Honor.

2          THE COURT:  We are still in the position where

3    Ms. Lieberson says, with regard to the advertising,

4    she points to printouts from advertising essentially

5    today, a YouTube with regard to something from

6    England, apparently, or Great Britain, and then says:

7    This is similar to what I saw.

8          MR. SHAH:  I think from plaintiff's

9    perspective, your Honor, both with respect to the

10   January 2008 purchase and the January 2010 purchase

11   based on the "new and improved" moniker --

12         THE COURT:  By the way, let me stop you right

13   there.  I'm going to change gears.

14         The "new and improved" moniker, as you call

15   it, on the 2010, they say -- now, of course, I can

16   only take the pleadings, but I can consider the labels

17   which are integral to your pleadings.

18         First of all, they have said in their

19   opposition papers that those words, "new and

20   improved," were on the 2008 label as well.  You did

21   not in your opposition papers dispute that in any way.

22   In fact, if you look at the label, it has a 2007

23   copyright which means it's the same wording in 2010.

24         Where does the "new and improved" in 2010

25   somehow change things?

1          MR. SHAH:  Well, it is certainly something

2     that she focused on in connection with the 2010

3     purchase that led her to believe that --

4          THE COURT:  But it wasn't different in the

5     2008.  You are not disputing that.  I have the labels.

6          MR. SHAH:  We are not disputing that.

7          THE COURT:  Let me just stop you with 2010.

8          How can you ever get, assuming you meet the

9     other elements -- because I've already ruled,

10    basically, at least as a pleading matter, whether the

11    labels could be -- or an unlawful act, and assuming

12    you get through ascertainable loss, how do you get to

13    the causation prong when she's pointing out, as you

14    are still trying to emphasize to me today, this "new

15    and improved" language that was the same in 2008 and

16    nothing changed?

17         MR. SHAH:  I think we get to the causation

18    prong very readily, your Honor, and that is,

19    fundamentally, the purchase was made on the

20    representation that the products, the two products --

21    the lotion and the bath product -- that they were

22    clinically proven to help babies sleep better.  But

23    for that representation and that understanding, based

24    on the label and the other advertisements that

25    Ms. Lieberson saw, we allege very specifically she

8

```
 1   would not have purchased --

 2           THE COURT:  I'm focusing on 2010.

 3           Just follow me, Mr. Shah.

 4           2010.  I'm dividing up the allegations at the

 5   moment.  Putting aside 2008.

 6           Come 2010, she says:  I now have a second

 7   child, and I look at the labels, and I look at the

 8   advertising and the "new and improved," and I say:

 9   Let's give it another shot.  After, in 2008, she

10   claims she used it, and it didn't work, and she'd

11   already made a determination that these products

12   didn't work.

13           Your focus seems to have been on those words

14   "new and improved," which you seem to suggest why she

15   should now be thinking:  Oh, well, maybe there is

16   something different going on, and I'm going to rely on

17   these labels and advertising again.  Whereas, what's

18   been pointed out is the underlying assumption of those

19   words "new and improved," that those were new words

20   from 2008, is incorrect.

21           MR. SHAH:  Ms. Lieberson's claim under the CFA

22   isn't predicated on the "new and improved" term -- or

23   the wording "new and improved."  It's predicated on

24   the representation on the label -- on the advertising

25   that its claim is proven to help babies sleep better.
```

9

1   The "new and improved" tells the narrative and is part

2   of the story, but it's not the predicate for the

3   unlawful conduct.

4        THE COURT:  I'm on the causation prong, and

5   what I'm suggesting to you is, she's already made a

6   determination the product doesn't work.  So for you to

7   argue that there was then the allegedly unlawful acts

8   that appear on the label and/or the advertising that

9   caused her to buy in 2010 fails of its own weight, it

10  falls.

11       MR. SHAH:  Well, I respectfully disagree

12  because I still think that she purchased the product

13  with the understanding that it would have efficacy as

14  it related to helping her infant sleep better, and

15  that was the fundamental -- and with respect to the

16  causation prong, it's a matter seeing the

17  representations, being exposed to the representations,

18  making a purchasing decision based on the

19  representations; the corollary being the additional

20  allegation that but for the representation, she

21  wouldn't have purchased the product.

22       THE COURT:  It doesn't make sense.  She had

23  already purchased it in 2008 and made a determination

24  it didn't work and nothing changed, and you have not

25  pointed out anything that changed.

1          You have not adequately pled causation with

2     regard to the 2010 buy.  So put that aside.

3          Now, let's focus on 2008.  2008 I had already

4     ruled on the first opinion, and, though, Mr. Kott, you

5     seem to want me to revisit it, I'm not revisiting

6     whether that language could set forth a claim that

7     this was an unlawful conduct.

8          The question next, though, that we had was

9     ascertainable loss.  I'm only focusing on the label

10    for now.  We'll get to the advertising in a moment.

11         On the ascertainable loss, the manner in which

12    it's now been pled is that Ms. Lieberson suggests that

13    she paid a premium price for this product, these

14    Bedtime Bath Products, as opposed to comparing them to

15    the regular Johnson & Johnson baby lotions and bath

16    products.

17         Have a seat for a second, Mr. Shah.

18         MR. SHAH:  Thank you.

19         THE COURT:  Mr. Kott, you focus on the fact

20    that, one, in doing her comparison -- which is also a

21    comparison of today prices, rather than 2008 prices,

22    but she said that she paid that same price in 2008.

23    That's what she says.  Whether you believe it or not

24    is not really -- that we can't go behind at the

25    moment.

1    One of your other arguments is in the chart

2  that she has provided in comparison, she doesn't use

3  ShopRite, which is where she said she bought the

4  product in 2008.  I find the chart useless in that

5  sense because it really doesn't tell me where she

6  bought it, what the pricing was then, but she does say

7  in her complaint, at the very least, that she did pay

8  a premium price, and that she knows that the prices at

9  the time were more for this product than for the

10  regular products.

11    I don't think she has to give us the actual

12  cents that it were.  I think the manner in which Mr.

13  Shah has gone about it is a problem, but she's clearly

14  said she paid a premium price back then.

15    Isn't that sufficient then for ascertainable

16  loss?

17    MR. KOTT:  No, your Honor, because what she

18  has done is she has pled in conclusory terms what a

19  comparable product is.

20    Hear me out on this a little longer, your

21  Honor.

22    How do we know what a comparable product is?

23  Looking at actually what she pled in the first amended

24  complaint, the one that is the subject, -- and I'm now

25  referring to paragraph 44 -- she doesn't define what a

 1   comparable product is.  If we come over to the labels,

 2   which are Exhibit A, Exhibits 1 and 2, the labels

 3   indicate that our product has "natural calm essences"

 4   which are both trademark and patent pending, not the

 5   subject of the fraud claims.  So our product is

 6   advertised and has special ingredients -- aside from

 7   the sleep part, aside from what the basis of the

 8   complaint is.

 9         So I would suggest, in response to the Court's

10   question, she hasn't adequately pled it because she

11   has a conclusion, comparable products, without telling

12   us, the Court, or Johnson & Johnson, what the

13   comparable products are.

14         Do they have this special patent pending

15   trademark feature that's prominent?  When you look at

16   the label, it's right on the front.  That's a

17   prominent part.  As I understand it, your Honor,

18   that's something that deals in part with smell and

19   what the product smells like and some other features.

20   So we don't know what she means when she says

21   "comparable."

22         I drive a Toyota Camry.  Toyota Motor Company

23   makes a Lexus.  I don't think anybody would say my

24   Camry is comparable to the Lexus.  So, for that

25   reason -- and, also, I think saying I paid similar

1  prices --

2         THE COURT:  Isn't that the summary judgment

3  argument though?

4         MR. KOTT:  No.

5         THE COURT:  I disagree with you, Mr. Kott.

6         First of all, I don't know what "natural calm"

7  means.  That means nothing to me without some further

8  explanation.  The position that the plaintiff takes,

9  that, basically, a J&J body lotion or bath product,

10 another baby product that does those things is a

11 comparable product.  Ultimately, I would need a lot

12 more information to make sure that it is not a

13 comparable product or it is.

14        On its face, it's a little bit different, I

15 think, when you are talking about cars, or we're

16 talking about high-end beauty supplies, moisturizers

17 for women, et cetera.  We're talking about baby

18 lotions and baby washes.

19        You may be right in the end.  But I think that

20 would be subject to some discovery as to what these

21 additional products are, and do they make that or not

22 make that a comparable product.

23        On its face, at this moment, I think it is

24 adequate to plead that the basic J&J body lotion or

25 baby wash could be comparable and that the premium

14

1    price was charged.

2         Your chart is of no help to me.  But the fact

3    that she said she paid a premium price in 2008, I'll

4    take that, so that you may have an ascertainable loss.

5         And then with that, I do find that with regard

6    to the 2008 labeling at least, the causation has been

7    shown as well.

8         Let me turn to your advertising.  Print

9    advertising, you have given me nothing with regard to

10   the magazines.  You have not adequately pled as to any

11   of the magazines.

12        MR. SHAH:  If I may be heard briefly, your

13   Honor?

14        THE COURT:  Yes.

15        MR. SHAH:  Your Honor, with respect to

16   specificity, -- and your Honor has written numerous

17   decisions and has reiterated the standard many more

18   times than I have; but from our perspective, with

19   respect to consumer advertising, this pleading sets

20   forth the precise magazines -- Parents, Parenting, and

21   Baby Talk Magazine -- that she read during the time in

22   or about January of 2008 dealing with that

23   transaction.

24        It specifies that the representations that she

25   saw in connection with that advertising were the

1   representations stating that the products at issue are

2   clinically proven to help babies sleep better.

3          THE COURT:  What you are suggesting, Mr.

4   Shah -- this is the problem with your pleading still

5   as it stands with regard to the advertising.  What

6   you've done is gone about, you, or having your client

7   find current ads -- by the way, you haven't even

8   produced anything from magazines today; you've done

9   that with regard to the internet -- gone on and found

10  some things on the internet today or a year ago.  You

11  found this YouTube on British TV, something that aired

12  not even here, and now have her basically adopt that

13  to say:  I saw similar ads in 2008.

14          With regard to the print, the magazines, one,

15  here she doesn't even bother to attach, and you don't

16  have to attach the actual ad.  I'm not suggesting

17  that.  But she hasn't even suggested what the exact

18  language was.

19          And the problem again is, your client -- and

20  the cases have held this, and I know the Dewey case

21  has mentioned it and others, that the information as

22  to what you actually saw, heard, or read is within the

23  plaintiff's control or knowledge.  The notion of "I

24  need discovery from a defendant" doesn't apply to what

25  you saw back then.

16

1           She has not attempted to describe in the

2      complaint her recollection of what actually was

3      written, what were the words that she saw.  Instead,

4      what she does is she attaches things, except for the

5      print, and says:  "...and it was similar."

6           I don't understand her problem with saying:  I

7      saw -- if that's what she did and can recall:  I've

8      never seen a TV commercial that used the words

9      "clinically proven" to help my baby sleep better, and

10     I went out and I got this product.  Why can't she say

11     those things?  Why does she have to take some

12     television ad that she's finding on YouTube to suggest

13     that?

14           MR. SHAH:  Well, I think that setting aside

15     what was attached as representative, I think that the

16     pleading doesn't suggest that she's simply relying on

17     something else.

18           In paragraph 46, she says:  In reliance on the

19     claim that the Bedtime Bath Products were clinically

20     proven to help her four-month old sleep better; she

21     then viewed the labels and purchased it in January

22     2008.

23           So the very specific allegations that the

24     advertising that she saw in those magazines and the

25     commercials pertained to the representation -- again,

17

1   that's at the heart of the case, and that is that the

2   products are clinically proven to help babies sleep

3   better.

4           THE COURT:  She's got to say -- she's got to

5   say, I saw a TV ad that said that this product was

6   clinically proven to help my baby sleep better, and

7   whatever else it may have said, including the

8   three-step routine, or maybe it didn't say that.

9   That's what she has to tell us.

10          What was the statement?  Did she hear a

11  statement that said "clinically proven along with this

12  three-step routine"?  Did she hear only a statement

13  that said "clinically proven just using these

14  products"?  That's the point of knowing what was the

15  statement that she replied on; you still failed to do

16  that.

17          I'm not saying you have to attach, which is

18  why it's not a problem that you'd say:  Well, I have

19  to go back and find an archive, perhaps document of

20  this.  No, you don't have to attach it.  But she has

21  to say it's from her own knowledge and recollection

22  what she saw and when she saw it, and it doesn't have

23  to be chapter and verse, but it has to be sufficient

24  as to what was critical that she saw that she relied

25  on in deciding to make a purchase.  You haven't done

18

1    it here.  So the label stays in.  For the time being,

2    the ads are out.

3         I know Mr. Kott would like me to prevent you

4    from pleading again, but, frankly, since I still have

5    the label in, if you can do it, you can do it.  You'll

6    make a motion, though, this time.  I'm not doing as a

7    matter of right.  You can make a motion to amend to

8    add any ads that you want if you can plead them in a

9    better fashion as to the 2008 purchase, not as to

10   2010.  That claim is dismissed.

11        Mr. Kott, I do not agree with your motion that

12   as a matter of law the Court can rule that it was not

13   deceptive -- that it was not unlawful, so the claim

14   stays in and goes forward.

15        I would like to speak to counsel a few minutes

16   about the case, and I'll speak to you in chambers

17   about it.

18        We'll do an order.

19        THE CLERK:  All rise.

20        (Proceedings concluded.)

21   ///

22

23

24

25

19

**C E R T I F I C A T E**

I, **Vincent Russoniello**, Official United States

Court Reporter and Certified Court Reporter of the

State of New Jersey, do hereby certify that the

foregoing is a true and accurate transcript of the

proceedings as taken stenographically by and before me

at the time, place and on the date hereinbefore set

forth.

I do further certify that I am neither a relative

nor employee nor attorney nor counsel of any of the

parties to this action, and that I am neither a

relative nor employee of such attorney or counsel and

that I am not financially interested in this action.




S/Vincent Russoniello
Vincent Russoniello, CCR
Certificate No. 675
Date:  June 29, 2012

**0**

**08608** [1] - 1:11

**1**

**1** [1] - 12:2
**10** [1] - 3:9
**10-6196** [1] - 1:2
**11** [1] - 3:10
**13** [1] - 3:11
**138** [1] - 1:25
**14** [3] - 3:11, 3:12, 3:13
**16** [1] - 3:13
**17** [1] - 3:14
**18** [1] - 3:14

**2**

**2** [1] - 12:2
**2007** [1] - 6:22
**2008** [20] - 5:21, 6:10, 6:20, 7:5, 7:15, 8:5, 8:9, 8:20, 9:23, 10:3, 10:21, 10:22, 11:4, 14:3, 14:6, 14:22, 15:13, 16:22, 18:9
**2010** [13] - 5:21, 6:10, 6:15, 6:23, 6:24, 7:2, 7:7, 8:2, 8:4, 8:6, 9:9, 10:2, 18:10
**2012** [1] - 1:6
**28** [2] - 1:6, 2:9

**4**

**402** [1] - 1:11
**44** [1] - 11:25
**46** [1] - 16:18

**6**

**6** [1] - 3:6
**609)588-9516** [1] - 1:25
**675** [1] - 19:22

**7**

**7** [1] - 3:7
**753** [1] - 2:9

**9**

**9** [1] - 3:8

**A**

**ABOVE** [1] - 2:12

**ABOVE-ENTITLED** [1] - 2:12
**accurate** [1] - 19:9
**ACCURATE** [1] - 2:10
**act** [1] - 7:11
**ACTION** [1] - 1:2
**action** [2] - 5:9, 19:15, 19:17
**acts** [1] - 9:7
**actual** [2] - 11:11, 15:16
**ad** [3] - 15:16, 16:12, 17:5
**add** [1] - 18:8
**additional** [2] - 9:19, 13:21
**address** [1] - 5:18
**adequate** [1] - 13:24
**adequately** [3] - 10:1, 12:10, 14:10
**adopt** [1] - 15:12
**ads** [5] - 5:25, 15:7, 15:13, 18:2, 18:8
**advertised** [1] - 12:6
**advertisements** [1] - 7:24
**Advertising** [1] - 3:12
**advertising** [15] - 5:22, 5:23, 6:3, 6:4, 8:8, 8:17, 8:24, 9:8, 10:10, 14:8, 14:9, 14:19, 14:25, 15:5, 16:24
**ago** [1] - 15:10
**agree** [1] - 18:11
**aired** [1] - 15:11
**allegation** [1] - 9:20
**allegations** [2] - 8:4, 16:23
**allege** [1] - 7:25
**allegedly** [1] - 9:7
**amend** [1] - 18:7
**amended** [1] - 11:23
**AN** [1] - 2:10
**appear** [1] - 9:8
**appearances** [1] - 4:4
**apply** [1] - 15:24
**appropriate** [1] - 5:17
**archive** [1] - 17:19
**argue** [1] - 9:7
**arguing** [1] - 4:16
**argument** [2] - 5:16, 13:3
**arguments** [1] - 11:1
**ascertainable** [6] - 3:9, 7:12, 10:9, 10:11, 11:15,

14:4
**aside** [5] - 8:5, 10:2, 12:6, 12:7, 16:14
**assuming** [2] - 7:8, 7:11
**assumption** [1] - 8:18
**attach** [4] - 15:15, 15:16, 17:17, 17:20
**attached** [1] - 16:15
**attaches** [1] - 16:4
**attempted** [1] - 16:1
**attorney** [2] - 19:14, 19:16
**AVENUE** [1] - 1:25

**B**

**babies** [4] - 7:22, 8:25, 15:2, 17:2
**baby** [7] - 10:15, 13:10, 13:17, 13:18, 13:25, 16:9, 17:6
**Baby** [1] - 14:21
**based** [4] - 5:20, 6:11, 7:23, 9:18
**basic** [1] - 13:24
**basis** [1] - 12:7
**bath** [3] - 7:21, 10:15, 13:9
**Bath** [3] - 5:4, 10:14, 16:19
**BE** [1] - 2:10
**beauty** [1] - 13:16
**Bedtime** [3] - 5:4, 10:14, 16:19
**behalf** [5] - 1:17, 1:20, 4:8, 4:10, 4:24
**behind** [1] - 10:24
**BENNETT** [1] - 1:17
**better** [9] - 7:22, 8:25, 9:14, 15:2, 16:9, 16:20, 17:3, 17:6, 18:9
**bit** [1] - 13:14
**body** [2] - 13:9, 13:24
**bother** [1] - 15:15
**bought** [2] - 11:3, 11:6
**briefly** [1] - 14:12
**Britain** [1] - 6:6
**British** [1] - 15:11
**buy** [2] - 9:9, 10:2
**BY** [2] - 1:16, 1:19

**C**

**C.C.R** [1] - 1:24

**calm** [2] - 12:3, 13:6
**Camry** [2] - 12:22, 12:24
**cars** [1] - 13:15
**CARYN** [1] - 1:4
**case** [4] - 5:17, 15:20, 17:1, 18:16
**cases** [1] - 15:20
**causation** [6] - 7:13, 7:17, 9:4, 9:16, 10:1, 14:6
**caused** [1] - 9:9
**CCR** [2] - 2:16, 19:21
**cents** [1] - 11:12
**certainly** [1] - 7:1
**Certificate** [1] - 19:22
**CERTIFIED** [1] - 2:10
**Certified** [1] - 19:7
**certify** [2] - 19:8, 19:13
**cetera** [1] - 13:17
**CFA** [1] - 8:21
**chambers** [1] - 18:16
**change** [2] - 6:13, 6:25
**changed** [3] - 7:16, 9:24, 9:25
**chapter** [1] - 17:23
**charged** [1] - 14:1
**chart** [3] - 11:1, 11:4, 14:2
**child** [1] - 8:7
**CIVIL** [1] - 1:2
**claim** [6] - 8:21, 8:25, 10:6, 16:19, 18:10, 18:13
**claims** [2] - 8:10, 12:5
**CLARKSON** [1] - 1:11
**class** [2] - 5:10, 5:17
**clear** [1] - 4:24
**clearly** [1] - 11:13
**CLERK** [2] - 4:2, 18:19
**client** [2] - 15:6, 15:19
**clinically** [8] - 7:22, 15:2, 16:9, 16:19, 17:2, 17:6, 17:11, 17:13
**commercial** [1] - 16:8
**commercials** [1] - 16:25
**COMPANIES** [1] - 1:7
**Company** [1] - 12:22
**comparable** [11] - 11:19, 11:22, 12:1, 12:11, 12:13, 12:21, 12:24, 13:11, 13:13, 13:22, 13:25
**comparing** [1] - 10:14

comparison [3] - 10:20, 10:21, 11:2
complaint [5] - 4:23, 11:7, 11:24, 12:8, 16:2
concluded [1] - 18:20
conclusion [1] - 12:11
conclusory [1] - 11:18
conduct [2] - 9:3, 10:7
connection [2] - 7:2, 14:25
consider [1] - 6:16
consumer [1] - 14:19
CONSUMER [1] - 1:7
control [1] - 15:23
copyright [1] - 6:23
corollary [1] - 9:19
correct [3] - 5:1, 5:6, 6:1
counsel [3] - 18:15, 19:14, 19:16
course [1] - 6:15
COURT [21] - 1:1, 2:17, 4:3, 4:15, 4:19, 5:2, 5:7, 5:13, 6:2, 6:12, 7:4, 7:7, 8:2, 9:4, 9:22, 10:19, 13:2, 13:5, 14:14, 15:3, 17:4
Court [7] - 3:8, 3:11, 3:14, 12:12, 18:12, 19:7
court [1] - 4:1
Court's [1] - 12:9
COURTHOUSE [1] - 1:11
critical [1] - 17:24
curiosity [1] - 5:8
current [1] - 15:7

**D**

date [1] - 19:11
Date [1] - 19:22
David [1] - 4:11
DAVID [1] - 1:19
dealing [1] - 14:22
deals [1] - 12:18
deceptive [1] - 18:13
deciding [1] - 17:25
decision [1] - 9:18
decisions [1] - 14:17
Defendant [1] - 1:8
defendant [3] - 4:12, 4:14, 15:24
Defendants [1] - 1:20
define [1] - 11:25
describe [1] - 16:1

determination [3] - 8:11, 9:6, 9:23
Dewey [1] - 15:20
different [3] - 7:4, 8:16, 13:14
disagree [2] - 9:11, 13:5
discovery [2] - 13:20, 15:24
Discussion [1] - 3:5
discussion [1] - 5:14
dismissed [1] - 18:10
dispute [1] - 6:21
disputing [2] - 7:5, 7:6
DISTRICT [2] - 1:1, 1:1
dividing [1] - 8:4
document [1] - 17:19
done [4] - 11:18, 15:6, 15:8, 17:25
drive [1] - 12:22
during [1] - 14:21

**E**

EAST [1] - 1:11
efficacy [1] - 9:13
elements [1] - 7:9
emphasize [1] - 7:14
employee [2] - 19:14, 19:16
end [2] - 13:16, 13:19
England [1] - 6:6
English [2] - 4:12, 4:13
ENGLISH [1] - 1:19
ENTITLED [1] - 2:12
error [1] - 5:3
ESQUIRE [4] - 1:16, 1:17, 1:19, 1:20
ESQUIRES [2] - 1:16, 1:19
essences [1] - 12:3
essentially [1] - 6:4
et [1] - 13:17
etc [1] - 1:4
exact [1] - 15:17
except [1] - 16:4
Exhibit [1] - 12:2
Exhibits [1] - 12:2
explanation [1] - 13:8
exposed [1] - 9:17

**F**

face [2] - 13:14, 13:23
fact [3] - 6:22, 10:19,

14:2
failed [1] - 17:15
fails [1] - 9:9
falls [1] - 9:10
fashion [1] - 18:9
feature [1] - 12:15
features [1] - 12:19
few [1] - 18:15
financially [1] - 19:17
FINKELMAN [3] - 1:16, 1:17, 4:9
Finkelman [3] - 4:7, 4:9, 4:10
first [5] - 4:22, 6:18, 10:4, 11:23, 13:6
FISHER [1] - 1:11
FLW [1] - 1:2
focus [3] - 8:13, 10:3, 10:19
focused [1] - 7:2
focusing [2] - 8:2, 10:9
follow [1] - 8:3
FOLLOWING [1] - 2:10
FOR [1] - 1:1
foregoing [1] - 19:9
form [1] - 5:23
forth [3] - 10:6, 14:20, 19:12
forward [1] - 18:14
four [2] - 4:23, 16:20
four-month [1] - 16:20
frankly [1] - 18:4
fraud [1] - 12:5
FREDA [1] - 1:13
front [1] - 12:16
fundamental [1] - 9:15
fundamentally [1] - 7:19

**G**

gears [1] - 6:13
given [1] - 14:9
Great [1] - 6:6

**H**

hear [3] - 11:20, 17:10, 17:12
heard [2] - 14:12, 15:22
heart [1] - 17:1
held [1] - 15:20
help [8] - 7:22, 8:25, 14:2, 15:2, 16:9, 16:20, 17:2, 17:6

helping [1] - 9:14
hereby [1] - 19:8
hereinbefore [1] - 19:11
high [1] - 13:16
high-end [1] - 13:16
Honor [13] - 4:6, 5:1, 5:6, 5:12, 6:1, 6:9, 7:18, 11:17, 11:21, 12:17, 14:13, 14:15, 14:16
HONORABLE [1] - 1:13

**I**

improved [12] - 3:6, 6:11, 6:14, 6:20, 6:24, 7:15, 8:8, 8:14, 8:19, 8:22, 8:23, 9:1
IN [2] - 2:11
INC [1] - 1:7
including [1] - 17:7
incorrect [1] - 8:20
indicate [1] - 12:3
infant [1] - 9:14
information [2] - 13:12, 15:21
ingredients [1] - 12:6
instead [1] - 16:3
integral [1] - 6:17
interested [1] - 19:17
internet [3] - 5:23, 15:9, 15:10
IS [1] - 2:10
issue [1] - 15:1

**J**

J&J [2] - 13:9, 13:24
JAMES [1] - 1:16
James [1] - 4:7
January [4] - 6:10, 14:22, 16:21
Jersey [1] - 19:8
JERSEY [2] - 1:1, 1:25
Johnson [4] - 10:15, 12:12
JOHNSON [2] - 1:7
judgment [1] - 13:2
JUNE [1] - 1:6

**K**

knowing [1] - 17:14
knowledge [2] - 15:23, 17:21
knows [1] - 11:8

**Kott** [7] - 3:10, 4:11, 10:4, 10:19, 13:5, 18:3, 18:11
**KOTT** [6] - 1:19, 4:11, 4:17, 11:17, 13:4

**L**

**label** [10] - 5:20, 6:20, 6:22, 7:24, 8:24, 9:8, 10:9, 12:16, 18:1, 18:5
**labeling** [1] - 14:6
**labels** [8] - 6:16, 7:5, 7:11, 8:7, 8:17, 12:1, 12:2, 16:21
**language** [3] - 7:15, 10:6, 15:18
**law** [1] - 18:12
**least** [3] - 7:10, 11:7, 14:6
**led** [1] - 7:3
**Lexus** [2] - 12:23, 12:24
**LIEBERSON** [1] - 1:4
**Lieberson** [6] - 4:8, 4:25, 5:21, 6:3, 7:25, 10:12
**Lieberson's** [1] - 8:21
**LLP** [1] - 4:12
**look** [4] - 6:22, 8:7, 12:15
**looking** [1] - 11:23
**loss** [6] - 3:9, 7:12, 10:9, 10:11, 11:16, 14:4
**lotion** [4] - 5:4, 7:21, 13:9, 13:24
**lotions** [2] - 10:15, 13:18

**M**

**Magazine** [1] - 14:21
**magazines** [6] - 14:10, 14:11, 14:20, 15:8, 15:14, 16:24
**manner** [2] - 10:11, 11:12
**matter** [4] - 7:10, 9:16, 18:7, 18:12
**MATTER** [1] - 2:12
**mcCARTER** [1] - 1:19
**McCarter** [2] - 4:11, 4:13
**means** [4] - 6:23, 12:20, 13:7
**meet** [1] - 7:8
**mentioned** [1] - 15:21
**MERIN** [2] - 1:20, 4:13
**Merin** [1] - 4:13

**MILLER** [1] - 1:16
**Miller** [2] - 4:7, 4:10
**minutes** [1] - 18:15
**misnamed** [1] - 5:2
**moisturizers** [1] - 13:16
**moment** [4] - 8:5, 10:10, 10:25, 13:23
**moniker** [3] - 3:6, 6:11, 6:14
**month** [1] - 16:20
**morning** [1] - 4:6
**MOTION** [1] - 1:5
**motion** [4] - 5:18, 18:6, 18:7, 18:11
**Motor** [1] - 12:22
**moving** [1] - 4:17
**MR** [20] - 4:6, 4:11, 4:17, 4:18, 5:1, 5:6, 5:11, 5:25, 6:8, 7:1, 7:6, 7:17, 8:21, 9:11, 10:18, 11:17, 13:4, 14:12, 14:15, 16:14
**MS** [2] - 4:9, 4:13
**MY** [1] - 2:11

**N**

**narrative** [1] - 9:1
**NATALIE** [1] - 1:17
**natalie** [1] - 4:9
**natural** [2] - 12:3, 13:6
**need** [2] - 13:11, 15:24
**never** [1] - 16:8
**new** [12] - 6:11, 6:14, 6:19, 6:24, 7:14, 8:8, 8:14, 8:19, 8:22, 8:23, 9:1
**New** [2] - 3:6, 19:8
**NEW** [2] - 1:1, 1:25
**next** [2] - 4:20, 10:8
**NJ** [1] - 1:11
**NO** [1] - 1:2
**NOTES** [1] - 2:11
**nothing** [4] - 7:16, 9:24, 13:7, 14:9
**notion** [1] - 15:23
**numerous** [1] - 14:16

**O**

**OF** [3] - 1:1, 1:4, 2:11
**Official** [1] - 19:6
**OFFICIAL** [2] - 1:24, 2:17
**old** [1] - 16:20

**one** [5] - 5:3, 10:20, 11:1, 11:24, 15:14
**open** [1] - 4:1
**opinion** [1] - 10:4
**opposed** [1] - 10:14
**opposition** [2] - 6:19, 6:21
**order** [1] - 18:18
**own** [2] - 9:9, 17:21

**P**

**Page** [1] - 3:3
**paid** [5] - 10:13, 10:22, 11:14, 12:25, 14:3
**papers** [2] - 6:19, 6:21
**paragraph** [2] - 11:25, 16:18
**Parenting** [1] - 14:20
**Parents** [1] - 14:20
**part** [4] - 9:1, 12:7, 12:17, 12:18
**parties** [1] - 19:15
**party** [1] - 4:17
**patent** [2] - 12:4, 12:14
**PAXSON** [1] - 1:25
**pay** [1] - 11:7
**pending** [2] - 12:4, 12:14
**people** [1] - 5:15
**perhaps** [1] - 17:19
**period** [1] - 5:22
**perspective** [2] - 6:9, 14:18
**pertained** [1] - 16:25
**place** [1] - 19:11
**plaintiff** [4] - 4:8, 4:10, 4:18, 13:8
**plaintiff's** [2] - 6:8, 15:23
**Plaintiffs** [1] - 1:5, 1:17
**plead** [2] - 13:24, 18:8
**pleading** [6] - 4:20, 7:10, 14:19, 15:4, 16:16, 18:4
**pleadings** [2] - 6:16, 6:17
**pled** [6] - 10:1, 10:12, 11:18, 11:23, 12:10, 14:10
**point** [4] - 4:22, 5:3, 5:15, 17:14
**pointed** [2] - 8:18, 9:25
**pointing** [1] - 7:13
**points** [1] - 6:4
**position** [2] - 6:2, 13:8

**precise** [1] - 14:20
**predicate** [1] - 9:2
**predicated** [2] - 8:22, 8:23
**premium** [5] - 10:13, 11:8, 11:14, 13:25, 14:3
**prevent** [1] - 18:3
**price** [6] - 10:13, 10:22, 11:8, 11:14, 14:1, 14:3
**prices** [4] - 10:21, 11:8, 13:1
**pricing** [1] - 11:6
**print** [4] - 5:23, 14:8, 15:14, 16:5
**printouts** [1] - 6:4
**problem** [5] - 11:13, 15:4, 15:19, 16:6, 17:18
**proceedings** [2] - 18:20, 19:10
**Proceedings** [1] - 3:3
**produced** [1] - 15:8
**product** [21] - 5:4, 7:21, 9:6, 9:12, 9:21, 10:13, 11:4, 11:9, 11:19, 11:22, 12:1, 12:3, 12:5, 12:19, 13:9, 13:10, 13:11, 13:13, 13:22, 16:10, 17:5
**Products** [2] - 10:14, 16:19
**products** [14] - 4:23, 4:25, 5:10, 7:20, 8:11, 10:16, 11:10, 12:11, 12:13, 13:21, 15:1, 17:2, 17:14
**prominent** [2] - 12:15, 12:17
**prong** [4] - 7:13, 7:18, 9:4, 9:16
**proven** [9] - 7:22, 8:25, 15:2, 16:9, 16:20, 17:2, 17:6, 17:11, 17:13
**provided** [1] - 11:2
**purchase** [6] - 6:10, 7:3, 7:19, 17:25, 18:9
**purchased** [5] - 8:1, 9:12, 9:21, 9:23, 16:21
**purchases** [1] - 5:21
**purchasing** [1] - 9:18
**PURSUANT** [1] - 2:9
**pursuing** [4] - 4:24, 5:10, 5:20, 5:22
**put** [1] - 10:2

**putative** [1] - 5:9
**putting** [1] - 8:5

**Q**

**questions** [1] - 4:21

**R**

**rather** [1] - 10:21
**re** [1] - 3:5
**read** [2] - 14:21, 15:22
**readily** [1] - 7:18
**really** [4] - 5:4, 5:16, 10:24, 11:5
**reason** [1] - 12:25
**recollection** [2] - 16:2, 17:21
**references** [1] - 4:23
**referring** [1] - 11:25
**regard** [8] - 6:3, 6:5, 10:2, 14:5, 14:9, 15:5, 15:9, 15:14
**regular** [2] - 10:15, 11:10
**reiterated** [1] - 14:17
**related** [1] - 9:14
**relative** [2] - 19:13, 19:16
**reliance** [1] - 16:18
**relied** [1] - 17:24
**rely** [1] - 8:16
**relying** [1] - 16:16
**replied** [1] - 17:15
**REPORTER** [2] - 1:24, 2:17
**Reporter** [2] - 19:7
**representation** [5] - 7:20, 7:23, 8:24, 9:20, 16:25
**representations** [5] - 9:17, 9:19, 14:24, 15:1
**representative** [2] - 5:17, 16:15
**respect** [4] - 6:9, 9:15, 14:15, 14:19
**respectfully** [1] - 9:11
**response** [1] - 12:9
**revisit** [1] - 10:5
**revisiting** [1] - 10:5
**rise** [2] - 4:2, 18:19
**routine** [2] - 17:8, 17:12
**rule** [1] - 18:12
**ruled** [2] - 7:9, 10:4
**Ruling** [3] - 3:8, 3:11, 3:14

**RUSSONIELLO** [2] - 1:24, 2:16
**Russoniello** [2] - 19:6, 19:21

**S**

**SARA** [1] - 1:20
**Sarah** [1] - 4:13
**saw** [13] - 6:7, 7:25, 14:25, 15:13, 15:22, 15:25, 16:3, 16:7, 16:24, 17:5, 17:22, 17:24
**seat** [2] - 4:15, 10:17
**seated** [1] - 4:5
**second** [2] - 8:6, 10:17
**SECTION** [1] - 2:9
**seeing** [1] - 9:16
**seem** [2] - 8:14, 10:5
**sense** [2] - 9:22, 11:5
**set** [2] - 10:6, 9:11
**sets** [1] - 14:19
**setting** [1] - 16:14
**Shah** [11] - 3:7, 3:13, 4:7, 4:8, 4:10, 4:23, 5:8, 8:3, 10:17, 11:13, 15:4
**SHAH** [18] - 1:16, 1:16, 4:6, 4:18, 5:1, 5:6, 5:11, 5:25, 6:8, 7:1, 7:6, 7:17, 8:21, 9:11, 10:18, 14:12, 14:15, 16:14
**Shepherd** [2] - 4:7, 4:9
**SHEPHERD** [1] - 1:16
**ShopRite** [1] - 11:3
**shot** [1] - 8:9
**shown** [1] - 14:7
**side** [1] - 4:16
**similar** [4] - 6:7, 12:25, 15:13, 16:5
**simply** [1] - 16:16
**sleep** [9] - 7:22, 8:25, 9:14, 12:7, 15:2, 16:9, 16:20, 17:2, 17:6
**smell** [1] - 12:18
**smells** [1] - 12:19
**special** [2] - 12:6, 12:14
**specific** [1] - 16:23
**specifically** [1] - 7:25
**specificity** [1] - 14:16
**specifies** [1] - 14:24
**standard** [1] - 14:17
**stands** [1] - 15:5
**STATE** [1] - 1:11

**State** [1] - 19:8
**statement** [4] - 17:10, 17:11, 17:12, 17:15
**STATES** [2] - 1:1, 1:11
**States** [1] - 19:6
**stating** [1] - 15:1
**stays** [2] - 18:1, 18:14
**STENOGRAPHIC** [1] - 2:11
**stenographically** [1] - 19:10
**step** [2] - 17:8, 17:12
**still** [7] - 5:20, 6:2, 7:14, 9:12, 15:4, 17:15, 18:4
**stop** [2] - 6:12, 7:7
**story** [1] - 9:2
**STREET** [1] - 1:11
**subject** [3] - 11:24, 12:5, 13:20
**sufficient** [2] - 11:15, 17:23
**suggest** [4] - 8:14, 12:9, 16:12, 16:16
**suggested** [1] - 15:17
**suggesting** [3] - 9:5, 15:3, 15:16
**suggests** [1] - 10:12
**summary** [1] - 13:2
**supplies** [1] - 13:16

**T**

**television** [2] - 5:25, 16:12
**term** [1] - 8:22
**terms** [1] - 11:18
**THE** [25] - 1:1, 1:13, 2:9, 2:11, 4:2, 4:3, 4:15, 4:19, 5:2, 5:7, 5:13, 6:2, 6:12, 7:4, 7:7, 8:2, 9:4, 9:22, 10:19, 13:2, 13:5, 14:14, 15:3, 17:4, 18:19
**thinking** [1] - 8:15
**three** [2] - 17:8, 17:12
**three-step** [2] - 17:8, 17:12
**TITLE** [1] - 2:9
**TO** [2] - 2:9, 2:10
**today** [6] - 5:19, 6:5, 7:14, 10:21, 15:8, 15:10
**Toyota** [2] - 12:22
**trademark** [2] - 12:4, 12:15

**transaction** [1] - 14:23
**transcript** [1] - 19:9
**TRANSCRIPT** [2] - 1:4, 2:10
**TRANSCRIPTION** [1] - 2:11
**TRENTON** [2] - 1:11, 1:25
**true** [1] - 19:9
**trying** [1] - 7:14
**turn** [1] - 14:8
**TV** [4] - 5:24, 15:11, 16:8, 17:5
**two** [3] - 4:25, 5:7, 7:20
**typographical** [1] - 5:3

**U**

**U.S** [1] - 2:17
**U.S.COURT** [1] - 1:24
**ultimately** [1] - 13:11
**under** [1] - 8:21
**underlying** [1] - 8:18
**UNITED** [2] - 1:1, 1:11
**United** [1] - 19:6
**unlawful** [5] - 7:11, 9:3, 9:7, 10:7, 18:13
**up** [1] - 8:4
**USC** [1] - 2:9
**USDJ** [1] - 1:13
**useless** [1] - 11:4

**V**

**verse** [1] - 17:23
**viewed** [1] - 16:21
**VINCENT** [2] - 1:24, 2:16
**Vincent** [2] - 19:6, 19:21

**W**

**wash** [1] - 13:25
**washes** [1] - 13:18
**weight** [1] - 9:9
**whereas** [1] - 8:17
**WOLFSON** [1] - 1:13
**women** [1] - 13:17
**wording** [2] - 6:23, 8:23
**words** [6] - 6:19, 8:13, 8:19, 16:3, 16:8
**written** [2] - 14:16, 16:3

**Y**

**year** [1] - 15:10

**YouTube** [3] - 6:5, 15:11, 16:12