James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone:  (856) 858-1770
Facsimile:  (856) 858-7012
Email: jshah@sfmslaw.com
         nfinkelman@sfmslaw.com

**Counsel for Plaintiff and the Class**

**(Additional Counsel appear on the signature page)**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **CARYN LIEBERSON, LISA TRIANTAFILLOU, and PAMELA DUBIN, On Behalf of Themselves and All Others Similarly Situated,** | : : : : : : | |
| | : | **Civil Action No. 10-cv-6196 (FLW)(DEA)** |
| **Plaintiffs,** | : : | |
| **v.** | : : : | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| **JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,** | : : : | |
| **Defendant.** | : : | |

Plaintiffs, Caryn Lieberson ("Lieberson"), Lisa Triantafillou ("Triantafillou"), and

Pamela Dubin (collectively "Plaintiffs"), allege, upon personal knowledge as to themselves and

their own acts, and upon information and belief (based on the investigation of counsel) as to all

other matters, as follows:

## NATURE OF ACTION

1.      Defendant, Johnson & Johnson Consumer Companies, Inc. ("J&J" or "Defendant"), manufactures, markets and sells Johnson & Johnson Bedtime Bath Products, including JOHNSON'S® BEDTIME® Bath ("Bedtime Bath") and JOHNSON'S® BEDTIME® Lotion ("Bedtime Lotion") (collectively, "Bedtime Bath Products" or "Products"), which purport to help a baby sleep better.  Specifically, on the front of each bottle, there is a prominent logo that proclaims: "CLINICALLY PROVEN, HELP BABY SLEEP BETTER."[1]  Further, J&J markets and advertises the Bedtime Bath Products as having the following benefits: (1) "Releases NaturalCalm Essences" (Exhibits 1, 2); (2) "help your baby fall asleep easier" (Exhibits 1, 2); and (3) "help[] babies...sleep through the night better."  (Exhibits 1, 2).  J&J also markets and advertises, on the back of the bottles, that it has also created a "clinically proven" 3-step routine of a warm bath, gentle massage (with the Products) and quiet activities that will help babies sleep better (*e.g.*, reading, cuddling, and singing lullabies) (Exhibits 1, 2).

2.      Since the introduction of the Bedtime Bath Products in 2000, Defendant's nationwide advertising campaign for the Bedtime Bath Products has been extensive, and Defendant has spent a significant amount of money to convey its deceptive messages to consumers throughout the United States and other parts of the world.  Defendant utilizes a wide array of media to convey its deceptive claims about the Bedtime Bath Products, including in television, magazines, the Internet, and on the Product labels and labeling.  Through this massive marketing campaign, Defendant has worked to convey a singular message: the Bedtime Bath

---

[1]A true and correct copy of the product label for Bedtime Lotion is attached hereto as Exhibit 1, and a true and correct copy of the product label for Bedtime Bath is attached hereto as Exhibit 2.

Products are clinically proven to help babies sleep better.  Each person who has purchased the Bedtime Bath Products has been exposed to the advertising message and, in particular, the misleading labels, and purchased the Products as a direct result of that message.

3.     Defendant's claims are deceptive and misleading, and have been designed solely to cause consumers to buy Bedtime Bath Products.  Defendant knew or should have known, at the time it began selling the Products, that there are no scientifically significant or reliable studies showing that Bedtime Bath Products are clinically proven to provide the results promised by Defendant, and Defendant has no reliable, relevant substantiation for the claims it makes regarding the Products.

4.     As a result of its unsubstantiated claims, J&J charges a premium of at least $1.00 for Bedtime Bath Products over its other baby washes and lotions, which premium Plaintiffs and other consumers paid (and continue to pay) with the specific understanding, based upon Defendant's false and misleading labeling, advertising and pervasive representations, that using the Bedtime Bath Products, alone, or in connection with the "proven" 3-step nighttime routine, will help babies sleep better.  As a result of seeing these false and misleading representations, Plaintiffs and consumers bought the Bedtime Bath Products, paid more for the Bedtime Bath Products than they otherwise would have paid absent the wrongful conduct, and have been damaged and suffered an ascertainable loss as a result of the wrongful conduct.

5.     This nationwide class action seeks to provide redress to consumers who have been harmed by the false and misleading marketing practices Defendant has engaged in with respect to the Bedtime Bath Products.  Defendant's conduct has included the systematic and continuing practice of disseminating false and misleading information from New Jersey and throughout the

United States via pervasive multi-media advertising and the product packaging, all of which were and are intended to induce unsuspecting consumers, including Plaintiffs and the members of the Class, into purchasing the more expensive Bedtime Bath Products, which are not clinically proven to have the benefits that are represented, although those very supposed benefits serve as the basis for consumers' decisions to purchase the Bedtime Bath Products as opposed to ordinary Johnson & Johnson baby washes and lotions which have long been sold on the market, and which do not purport to provide such clinically proven benefits.

6.      Plaintiffs assert claims on behalf of themselves and the Class (defined below) for violations of the New Jersey Consumer Fraud Act, N.J.S.A. §  56:8-1, *et seq.* ("CFA") and in the alternative for violations of the CFA and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.

7.      Though this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

## PARTIES

8.      Lieberson is, and at all times relevant to this action has been, a resident and citizen of  Mt. Laurel, New Jersey.

9.      Triantiafillou is, and at all times relevant to this action has been, a resident and citizen of Somerdale, New Jersey.

10.      Dubin is, and at all times relevant to this action has been, a resident and citizen of Pembrook Pines, Florida.

11.      J&J is a New Jersey corporation and, at all times relevant to this action,

has maintained its principal place of business in Skillman, New Jersey.  J&J, thus, is a citizen of New Jersey.  All critical decisions made with respect to the Bedtime Bath Products, including all decisions concerning the marketing and advertising of the Bedtime Bath Products, were made by J&J employees located in New Jersey.  J&J sold the Bedtime Bath Products through retail stores, the Internet, and also through television and other advertisements, all of which led consumers to purchase the Bedtime Bath Products.  J&J knew, or should have known, that the representations made regarding the Bedtime Bath Products were false and misleading at the time that it began distributing the Bedtime Bath Products in the United States market.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant is a resident of this judicial district, conducts business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within and emanated from this judicial district.

## FACTUAL BACKGROUND

14.    This class action is brought against J&J for the benefit and protection of all purchasers of the Bedtime Bath Products.

15.    J&J launched its Bedtime Bath Products in 2000.  As a general matter, many babies and toddlers have difficulty falling asleep and sleeping through the night.  Indeed, J&J's

website indicates that "20-30 percent of babies experience regular sleep problems, including difficulty falling asleep and sleeping through the night.  Most parents, 76 percent, report a desire to change some aspect of their baby's sleep routine."

16.     J&J  has had baby washes and lotions on the market for years.  J&J is not in the business of selling routines -- it is in the business of selling its Products.  In order to sell more products, and attempt to capitalize on this perceived market to improve baby's sleep routine, J&J introduced its Bedtime Bath Products.  Indeed, J&J launched these Products and claimed it had "expanded its line to bring you **innovative products** and the information you need to help your baby sleep better."  (Emphasis added).[2]

17.     On one of its websites, Defendant provides a New Parent's Guide to Better Sleep, which states that: "Now, thanks to the sleep experts at Johnson's, a clinically proven before-bed routine, and a remarkable line of Johnson's products developed with Naturalcalm essences, all babies can sleep better."  The Guide goes on to state: "This booklet provides information on a unique, simple, nightly before-bed routine and the ONLY line of baby bath and massage products clinically proven to help the babies sleep better...so you can help your baby get to sleep faster and spend less time awake during the night." (Exhibit 3).

18.     The Bedtime Bath Products are known to customers only by the representations made about the Products by Defendant.  If, as is the case here, J&J sold other baby washes and lotions for infants and young children, then customers would have no reason to buy the NEW products, the Bedtime Bath Products, and pay a premium for them, unless and until they are

---

[2]A true and correct copy of the New Parent's Guide to Better Sleep, http://www.johnsonsprofessional.com/bedtime-sleep/new-parent (last visited 10/4/11), is attached hereto as Exhibit 3.

exposed to the messages about its purported properties and benefits, by Defendant.  And it is only

on the label, as well as in the marketing material disseminated by Defendant, that the properties

are explained.  In other words, given the existence of similar bath and skin lotion products, long

sold by J&J, for washing and moisturizing a baby's skin, consumers would purchase the Bedtime

Bath Products if, **and only if**, they were exposed to Defendant's pervasive labeling and

advertising campaign that these NEW Products did something that its others did not do -- here, it

is that the new Bedtime Bath Products were CLINICALLY PROVEN to help baby sleep better.

19.     The labeling and marketing communicates a persistent and material message and

makes a common and pervasive representation that the Products are clinically proven to help

babies sleep better.

20.     The core representations alleged to be false and misleading, that the Products are

clinically proven to help babies sleep better, are all contained on the label itself for every

purchaser to read.

21.     On the front of the bottle of the Products, there is a prominent logo that proclaims:

"CLINICALLY PROVEN, HELP BABY SLEEP BETTER."  (Exhibits 1, 2).

22.     J&J claims that its Bedtime Bath and Bedtime Lotion are clinically proven to help

babies and toddlers fall asleep easier and sleep through the night better. (Exhibits 1-3).

23.     Therefore, Defendant expressly and impliedly represented that the Products were

clinically proven to help baby sleep better.

24.     As Defendant knows, however, contrary to the clear labeling and advertising, the

Bedtime Bath Products are not clinically proven to help a baby sleep better.

25.     J&J further markets and advertises, on the back label of the bottle, that it has also

created a "clinically proven" 3-step routine of a warm bath, gentle massage (with Products) and

quiet activities (*e.g.*, reading, cuddling, and singing lullabies).  *See* Exhibit 1.

> Johnson® has created a nightly routine that is clinically proven to help baby fall asleep
> through the night better.  Treat your baby to a warm bath using JOHNSON'S®
> BEDTIME BATH®, then gently massage skin with JOHNSONS® BEDTIME
> LOTION®.  Each product releases NATURALCALM™ essences, a patent pending blend
> of gentle soothing aromas.  Your baby will drift off to a better night's sleep...

Thus, Defendant has carefully created the misleading and deceptive impression that consumers

have the clinically proven Product **and** the clinically proven "3-step routine."

26.     At no time, however, either in its labels, advertising, or so-called clinical studies

does J&J attempt to sell the routine, or to describe the use of the routine or its studies, without

also including the Bedtime Bath Products in the description of the routine and in the description

of the studies.  Nor would one expect it to, since Defendant does not sell routines, it sells

Bedtime Bath Products.

27.     Since the launch of the Products and to the present, on its labeling and in its other

advertisements, J&J has consistently and uniformly stated that the Products are clinically proven

to help babies sleep better, which is intended to appear scientific, and to give the claims a special

significance, when in reality, the Products are not clinically proven.

28.     Throughout the relevant time period, Defendant has marketed the Products using

uniformly deceptive advertising and packaging.  Likewise, the labeling and marketing for the

Bedtime Lotion and Bedtime Bath contain substantially the same message.  A typical label

promises that:

> a.     the Products are "CLINICALLY PROVEN, HELP BABY SLEEP
>         BETTER" (Exhibits 1, 2);

-8-

b.      the Products "help your baby fall asleep easier and sleep through the night better" (Exhibits 1, 2);

c.      JOHNSON'S® BEDTIME® products with NATURALCALM™ essences are part of a clinically proven routine to help baby fall asleep easier and sleep through the night better (Exhibits 1, 2); and

d.      the nighttime routine is clinically proven to help babies and toddlers sleep better (Exhibits 1, 2).

29.      The Bedtime Bath Products print advertisements contain substantially similar messages about the ability of the Products to help babies sleep.  These advertisements emanate from New Jersey, and contain materially the same deceptive messages about the Products that Defendant has conveyed since the Products were launched.

30.      Defendant also provides Baby Sleep Guides as part of its advertising.  These marketing materials also contain the unfair and/or deceptive representations about the Products. In its Sleep Guide, which cites to its own "baby care experts" at J&J, Defendant states that:

Our new products, enriched with NATURALCALM™ essences, a unique blend of gentle ingredients and soothing aromas, can help your baby sleep better when used as part of a regular nightly routine. **JOHNSON'S® is the first and only brand that's clinically proven to help babies fall asleep easier and sleep through the night better.** To learn more about our products, visit JohnsonsBaby.com/sleep.

http://www.johnsonsbaby.com/sites/default/files/sleep_baby_6-18m.pdf (emphasis added)[3]

31.      Defendant also repeats its unfair and/or deceptive representations about its Products on its Internet websites www.johnsonsbaby.com, www.jnj.com and www.johnsonsprofessional.com.  The content of the websites contain materially the same

_____

[3]A true and correct copy of the Baby Sleep Guide, disseminated from New Jersey, is attached hereto as Exhibit 4.

message about the Products that Defendant has put on the labels and disseminated since its launch.

32.     For example, Defendant's website advertising states that the Products are formulated with NATURALCALM™, a "unique blend of patent pending essences that has been tested and proven to have relaxing properties."  In fact, since the time of the introduction of the Bedtime Bath Products, J&J has also added NATURALCALM™ to several of the Bedtime Bath Products.  J&J claims that NATURALCALM™ is a "patent-pending blend of gentle and soothing aromas" proven to promote calming and a relaxed state.  (Exhibit 1).

33.     The website also states that the Bedtime Lotion is "clinically shown to last all night long."[4]  Further, the website provides that the parent and child will get a "good night's rest."  The website also states: "Did you know?  A bedtime routine that includes a warm bath with "JOHNSON'S® BEDTIME® Bath, followed by a massage with "JOHNSON'S® BEDTIME® Lotion, and quiet time, is clinically proven to help babies fall asleep easier and sleep through the night better." (Exhibit 5).

34.     To attempt to reinforce the appearance that its claims are legitimate and its Bedtime Bath Products are different from its long-sold ordinary bath products, including that the benefits claims are backed by scientific and medical support, J&J refers to number of "studies" purporting to support the claims that the Products are clinically proven.

35.     However, no studies, clinical or otherwise, substantiate J&J's claims about its Bedtime Bath Products.  The study or studies J&J cites -- many of them funded by J&J or conducted by employees, consultants or agents of J&J itself -- are deeply flawed in design, or are

---

[4]A copy of the advertisement is attached hereto as Exhibit 5.

insignificant, but, in any event, do not even purport to test the "routine" with J&J's long-sold ordinary bath products, or with no products at all.

36.     Along these lines, Defendant provides through its website, so-called clinical information that also contains its unfair and/or deceptive representations, and although purporting to provide the "clinical support," the so-called studies do not support J&J's claims.[5] The "clinical support" documents provide as follows:

> A clinical study measured the impact of a 3-step before-bed routine on babies' nighttime sleep habits.  This routine, including a bath and massage with Johnson's Bedtime Bath and Johnson's Bedtime Lotion containing NaturalCalm essences, helped improve nighttime sleep. (Exhibit 6).

37.     However, neither this study, nor any clinical study, purports to measure or compare the impact of a 3-step before-bed routine on babies utilizing J&J's regular baby washes and lotions or with no products at all.

38.     Contrary to its representations, Defendant knows that the Bedtime Bath Products have not been subjected to clinical tests which substantiate the claim that using the 3-step routine with the Bedtime Bath Products is any more effective in helping babies sleep than using the 3-step routine without the Bedtime Bath Products, or even than using the 3-step routine without any products at all.

39.     In the United Kingdom, a challenge to the advertising of the very claims at issue here, found that Defendant's advertising was "likely to mislead" as Defendant failed to show that it was the use of the Products in the suggested routine that was proven to help babies sleep better and because the advertising did not make clear that the routine had only been tested on babies

---

[5] A copy of the "clinical" materials from the so-called "professional" portion of www.johnsonsbaby.com are attached hereto as Exhibit 6.

over seven months old.  The ASA Council "told them to ensure that any similar advertising did not suggest that Johnson's products, as part of the bedtime routine, had been proven to help babies sleep better and to make clear that the routine had been proven to work only for babies over seven months old."

http://www.asa.org.uk/ASA-action/Adjudications/2008/4/Johnson-and-Johnson-Ltd/ TF_ADJ_44345.aspx.[6]

40.     As a result of the lack of substantiation for its claims, representations made by J&J regarding the Bedtime Bath Products, which have been disseminated through television commercials, printed advertisements, websites, and product packaging, are deceptive, false and misleading.

41.     All of these representations made by J&J are deceptive, false and misleading. Moreover, as a result of these representations, Defendant was able to sell, to Plaintiffs and other consumers, the Bedtime Bath Products at a premium over its plain baby lotion and wash products (*e.g.* JOHNSON'S® Baby Lotion, JOHNSON'S® Baby Wash or other comparable name brand products), which cost at least twenty-five (25%) less than the Bedtime Bath Products.  In other words, each of the Plaintiffs purchased the Products at a premium price over other baby bath and lotions.

42.     Had Plaintiffs and other members of the proposed Class been aware of the truth, they would not have purchased the more expensive Bedtime Bath Products or would have paid substantially less for them.

---

[6]A true and correct copy of the decision is attached hereto as Exhibit 7.

**Plaintiffs' Experiences**

43.     Plaintiff Lieberson's claims are based on viewing the advertising and the Product labels.  On or about January 2008, when her first child was around four months old,  Lieberson viewed: (a) commercials on television, (b) advertisements from a number of parenting magazines that she routinely read including, for example, *Baby Talk, Parenting* and *Parents* magazines as well as internet advertisements similar to those described above; and (c) claims on the label of the bottles of the Bedtime Bath Products.  Plaintiff Lieberson specifically recalls viewing at this time, print advertisements that claimed that the Products were better than the other J&J products because these Products (and only these Products) were "clinically proven" to help babies sleep better.  Lieberson also specifically recalls viewing, at this time, television advertisements that claimed that the Products were better than the other J&J products because these Products (and only these Products) were "clinically proven" to help babies sleep better.

44.     These print and television advertisements prompted her to search out the Products in the ShopRite and to review the labels.  Lieberson read the labels, which also stated that the Products were clinically proven. The labels, coupled with the pervasive advertising message to which she had been exposed, convinced her to buy the Bedtime Bath Products.

45.     In reliance on the claim that the Bedtime Bath Products were clinically proven to help her four month old sleep better (including her review of the labels), Lieberson purchased, Bedtime Bath and Bedtime Lotion for approximately $5.69 per 15 oz. bottle, at the Shop Rite on Union Mill Road in Mt. Laurel, New Jersey.

46.     The labeling of the bottles and the representations therein, were made by Defendant.  Reasonably relying on the claims made in the pervasive advertising message

-13-

disseminated by Defendant through commercials, printed advertisements, as well as on the labeling of the bottles, Plaintiff purchased the Products. Plaintiff reasonably expected that the Products would work as advertised and sold and, thus, used the Bedtime Bath Products as directed.  By way of example, the back of the Bedtime Lotion bottle (Exhibit 1), states:

> Johnson® has created a nightly routine that is clinically proven to help baby fall asleep through the night better.  Treat your baby to a warm bath using JOHNSON'S® BEDTIME BATH®, then gently massage skin with JOHNSONS® BEDTIME LOTION®.  Each product releases NATURALCALM™ essences, a patent pending blend of gentle soothing aromas. Your baby will drift off to a better night's sleep...

47.     After using the Bedtime Bath Products purchased as part of the 3-step nightly routine for a period of time with her child, Lieberson discontinued use as she determined that neither the Bedtime Bath Products nor the "routine" helped her baby sleep better, because the Bedtime Bath Products had no efficacy.

48.     Plaintiff Dubin's claims are based on viewing the advertising and the Product labels.  On or about August 2011, when her child was a few months old, Dubin viewed: (a) commercials on television, (b) advertisements from *Parents* magazine; and (c) claims on the label of the bottles of the Bedtime Bath Products.  Plaintiff Dubin specifically recalls viewing at this time, print advertisements that claimed that the Products were better than the other J&J products because these Products (and only these Products) were "clinically proven" to help babies sleep better.  Dubin also specifically recalls viewing, at this time, television advertisements that claimed that the Products were better than the other J&J products because these Products (and only these Products) were "clinically proven" to help babies sleep better.

49.     These print and television advertisements prompted her to search out the Products

in the Target in Pembrook Pines and to review the labels.  Dubin read the labels, which also

stated that the Products were clinically proven. The labels, coupled with the pervasive advertising

message to which she had been exposed, convinced her to buy the Bedtime Bath Products.

50.     In reliance on the claim that the Bedtime Bath Products were clinically proven to

help her baby month old sleep better (including her review of the labels), Dubin purchased,

Bedtime Bath and Bedtime Lotion at the Target in Pemrook Pines, Broward County, Florida.

51.     The labeling of the bottles and the representations therein, were made by

Defendant.  Reasonably relying on the claims made in the pervasive advertising message

disseminated by Defendant through commercials, printed advertisements, as well as on the

labeling of the bottles, Plaintiff purchased the Products. Plaintiff reasonably expected that the

Products would work as advertised and sold and, thus, used the Bedtime Bath Products as

directed.  By way of example, the back of the Bedtime Lotion bottle (Exhibit 1), states:

> Johnson® has created a nightly routine that is clinically proven to help baby fall
> asleep through the night better.  Treat your baby to a warm bath using
> JOHNSON'S® BEDTIME BATH®, then gently massage skin with
> JOHNSONS® BEDTIME LOTION®.  Each product releases
> NATURALCALM™ essences, a patent pending blend of gentle soothing aromas.
> Your baby will drift off to a better night's sleep...

52.     After using the Bedtime Bath Products purchased as part of the 3-step nightly

routine for a period of time with her child, Dubin discontinued use as she determined that neither

the Bedtime Bath Products nor the "routine" helped her baby sleep better, because the Bedtime

Bath Products had no efficacy.

53.     Plaintiff Triantafillou's claims are based on the Product's labels. On or about

January or February 2012, when her daughter was around two months old, Triantafillou, while

shopping for a baby lotion, viewed the claims on the label of the bottles of the Bedtime Bath

Products. The labels convinced her to try the Bedtime Bath Products to help her baby sleep

better. In reliance on the label's claims that the Bedtime Bath Products were clinically proven to

help her child sleep better, she purchased Bedtime Lotion in March 2012 in either Walmart or

BabiesRUs in Deptford, New Jersey.

54.      The labeling of the bottles, and the representations therein, were made by

Defendant. Reasonably relying on the claims made in the pervasive advertising message

disseminated by Defendant through commercials, printed advertisements, as well as on the

labeling of the bottles, Plaintiff purchased the Bedtime Lotion. Plaintiff reasonably expected that

the Product would work as advertised and sold and thus used the Bedtime Bath Product as

directed. By way of example, the back of the Bedtime Lotion bottle (Exhibit 1), states:

> Johnson® has created a nightly routine that is clinically proven to help baby fall
> asleep through the night better. Treat your baby to a warm bath using JOHNSON'S®
> BEDTIME BATH®, then gently massage skin with JOHNSONS® BEDTIME
> LOTION®. Each product releases NATURALCALM™ essences, a patent pending
> blend of gentle soothing aromas. Your baby will drift off to a better night's sleep...

55.      After using the Bedtime Bath Product daily as part of a 3-step nightly routine for a

few months with her daughter, Plaintiff Triantafillou correctly determined that  neither the

Bedtime Bath Product nor the "routine" helped her baby sleep better, because the Product had no

efficacy.

56.      Plaintiffs each suffered an ascertainable loss in the amount of the price of the

Bedtime Bath Products as a result of the improper actions described herein because the Bedtime

Bath Products did not perform as Defendant claimed.

**New Jersey's Substantive Laws Apply To The Proposed Class**

57.     New Jersey's substantive laws may be applied to the claims of Plaintiffs and the

Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art.

IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or a significant aggregation

of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state

interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

58.     Defendant's headquarters and principal places of business are located in New

Jersey.  Defendant also owns property and conducts substantial business in New Jersey and,

therefore, New Jersey has a significant interest in regulating Defendant's conduct under its laws.

Defendant's decisions to reside in New Jersey and avail itself of New Jersey's laws renders the

application of New Jersey law to the claims herein constitutionally permissible.

59.     A substantial number of Class members, including Plaintiffs Lieberson and

Triantafillou, reside in New Jersey and purchased the Bedtime Bath Products in or from New

Jersey.

60.     New Jersey also is the state from which Defendant's misconduct emanated.  This

conduct similarly injured and affected Plaintiffs and Class members.  For instance, J&J's

marketing and advertising efforts (including Products' labeling) were created in and orchestrated

from the location of its present headquarters in New Jersey.

61.     The application of New Jersey's laws to the Class is also appropriate under New

Jersey's choice of law rules because New Jersey has significant contacts to the claims of the

Plaintiffs and the Class, and New Jersey has a greater interest in applying its laws here than any

other interested state.

## <u>CLASS ACTION ALLEGATIONS</u>

62.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

63.     The Class that Plaintiffs seek to represent is defined as follows:

> **<u>Class:</u>**
>
> All persons who purchased the Bedtime Bath Products within the United States, not for resale or assignment.

Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Bedtime Bath Products; and (c) the Judge to whom this case is assigned. In the alternative to a nationwide Class, Plaintiffs seeks to represent two sub-classes (collectively, the "Classes") defined as:

> **<u>New Jersey Class:</u>** All persons who purchased the Bedtime Bath Products within the State of New Jersey, not for resale or assignment ("New Jersey Sub-Class").
>
> **<u>Florida Class:</u>** All persons who purchased the Bedtime Bath Products within the State of Florida, not for resale or assignment ("Florida Sub-Class").

64.     **<u>Numerosity/Impracticability of Joinder</u>**: The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes includes thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

65.   **Commonality and Predominance**: There are common questions of law and fact which predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions, include, but are not limited to the following:

a.     whether Defendant engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Bedtime Bath Products;

b.     whether Defendant's acts and omissions violated the CFA and FDUPTA;

c.     whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiffs and the Classes regarding the marketing, promotion, advertising and sale of the Bedtime Bath Products, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiffs and the Classes;

d.     whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Bedtime Bath Products were intended to deceive the public;

e.     whether, as a result of Defendant's misconduct, Plaintiffs and the Classes are entitled to equitable relief and other relief, and, if so, the nature of such relief; and

f.     whether the members of the Classes have sustained ascertainable loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof.

66.   **Typicality:** The representative Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent.  Plaintiffs and all Class members have been injured by the same wrongful practices in which Defendant has engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

67.   **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor their attorneys have any interests

which are contrary to or conflicting with the Classes.

68.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Defendant has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

69.   Plaintiffs will not have any difficulty in managing this litigation as a class action.

**FIRST COUNT**

**On Behalf Of Plaintiffs And The Nationwide Class (and, in the alternative, on behalf of Plaintiffs Lieberson and Triantafillou on behalf of the New Jersey Sub-Class) Against J&J (<u>Violations of N.J.S.A. § 56:8-1 *et seq.*</u>)**

70.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

71.     Plaintiffs and other members of the Nationwide and New Jersey Sub-Class and Defendant are "persons" within the meaning of the CFA.

72.     Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA.

73.     The Bedtime Bath Products are "merchandise" within the meaning of the CFA.

74.     At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

75.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

76.     Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that it had purposely marketed and sold the Bedtime Bath Products in a manner that made Plaintiffs and reasonable consumers believe that the Bedtime Bath Products themselves were clinically proven to help babies sleep better and were also part of a "routine" that was clinically proven to help babies sleep better.

77.     Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that no clinical studies demonstrate that the Bedtime Bath Products are clinically proven to help, or will help babies sleep better.

78.     Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that no clinical studies demonstrate that using the Bedtime Bath Products with the 3-step routine is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products.

79.     Similarly, Defendant also failed to disclose material facts regarding the Bedtime Bath Products to Plaintiffs and members of the Class -- namely, that no clinical studies demonstrate that using the Bedtime Bath Products will help babies sleep better and that no clinical studies demonstrate that using the 3-step routine with Bedtime Bath Products is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products.

80.     Defendant's unconscionable conduct described herein included its false representations and the omission and concealment of material facts concerning the Bedtime Bath Products and their lack of efficacy.

81.     Defendant intended that Plaintiffs and the other members of the Class rely on these  acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Bedtime Bath Products.

82.     The false and misleading representations were intended to, and likely to, deceive a reasonable consumer.

83.     The facts not disclosed would be material to the reasonable consumer, and are facts that a reasonable consumer would consider important in deciding whether to purchase the Products and how much to pay.

84.     Defendant's representations and omissions were, and are, material to reasonable

consumers, including Plaintiffs, in connection with their respective decisions to purchase the Products.

85.     Had Defendant not engaged in false and misleading advertising regarding the Bedtime Bath Products, Plaintiffs and other members of the Class would not have purchased the Bedtime Bath Products.

86.     Had Defendant disclosed all material information regarding the Bedtime Bath Products to Plaintiffs and other members of the Class, they would not have purchased the Bedtime Bath Products.

87.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Bedtime Bath Products at a premium price, and they are entitled to recover such damages, together with appropriate penalties, including, but not limited to, treble damages, attorneys' fees and costs of suit.

88.     Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

        a.      Defendant controlled and directed its nationwide sales operations and support operations from New Jersey;

        b.      Defendant's marketing operations and decisions, including the decisions as to how to advertise, promote and sell the Bedtime Bath Products, were made in New Jersey, and Defendant's sales and marketing personnel are all based in New Jersey;

        c.      All Product review and analysis was conducted in New Jersey;

        d.      Defendant's principal places of business are located in New Jersey;

-23-

e.      The significant employees of Defendant are based in New Jersey;

f.      The majority of relevant documents of Defendant are located in New Jersey; and

g.      The facts and circumstances of this case bestow numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to Defendant, thereby making application of New Jersey law to the entire Class appropriate.

## SECOND COUNT
### On Behalf Of Florida Plaintiff And The Florida Sub-Class Against J&J
### (Violations of FDUTPA, Fla. Stat. § 501.201, *et seq*)

89.      Plaintiff Dubin repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

90.      Plaintiff Dubin resides and bought her Bedtime Bath Products in Florida.

91.      Plaintiff Dubin and the Class members are consumers within the meaning of FDUTPA.

92.      Defendant, through its conduct described in this Complaint, is engaged in trade and/or commerce within the meaning of FDUTPA.

93.      The purchase of the Bedtime Bath Products by Plaintiff Dubin and Class members, as described herein, constitute consumer transactions within the meaning of FDUTPA.

94.      Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

95.      Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that it had purposely marketed and sold the Bedtime Bath

-24-

Products in a manner that made Plaintiff Dubin and reasonable consumers believe that the Bedtime Bath Products themselves were clinically proven to help babies sleep better and were also part of a "routine" that was clinically proven to help babies sleep better.

96.     Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that no clinical studies demonstrate that the Bedtime Bath Products are clinically proven to help, or will help babies sleep better.

97.     Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that no clinical studies demonstrate that using the Bedtime Bath Products with the 3-step routine is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products.

98.     Similarly, Defendant also failed to disclose material facts regarding the Bedtime Bath Products to Plaintiff Dubin and members of the Class -- namely, that no clinical studies demonstrate that using the Bedtime Bath Products will help babies sleep better and that no clinical studies demonstrate that using the 3-step routine with Bedtime Bath Products is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products.

99.     By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce, which offend public policies and are immoral, unscrupulous and injurious to consumers.

100.    Plaintiff Dubin and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid more for the Bedtime Bath Products than they would have if they had known about the false statements.

101.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions. The representations at issue in this litigation were material to Plaintiff Dubin and any reasonable consumer.

102.    Had Defendant disclosed all material information regarding the Bedtime Bath Products to Plaintiff Dubin and other members of the Class, they would not have purchased the Bedtime Bath Products, or would have paid substantially less for them.

103.    As a direct and proximate result of Defendant's violations of FDUTPA, Plaintiff and the Class have suffered injury in fact and/or actual damage and/or ascertainable loss by purchasing the Bedtime Bath Products.  Had Defendant disclosed the true quality and nature of Products, Plaintiff Dubin and the Class would not have purchased them, or would have paid substantially less for them.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, pray for judgment against Defendant granting the following relief:

A.    An order certifying this case as a class action and appointing Plaintiffs as Class representatives and Plaintiffs' counsel to represent the Classes;

B.    Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

D.      Actual and/or statutory damages for injuries suffered by Plaintiffs and the Classes

and in the maximum amount permitted by applicable law;

E.      An order (1) requiring Defendant to immediately cease its wrongful conduct as set

forth above; (2) enjoining Defendant from continuing to misrepresent and conceal material

information and conduct business via the unlawful, unfair and deceptive business acts and practices

complained of herein; (3) ordering Defendant to engage in a corrective notice campaign; and (4)

requiring Defendant to pay to Plaintiffs and all members of the Classes the amounts paid for the

Bedtime Bath Products;

F.      Statutory pre-judgment and post-judgment interest on any amounts;

G.      Payment of reasonable attorneys' fees and costs; and

H.      Such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all causes of action so triable.


Dated: January 7, 2012                          SHEPHERD, FINKELMAN, MILLER &
                                                SHAH, LLP


                                                 /s/ James C. Shah_____
                                                James C. Shah
                                                Natalie Finkelman Bennett
                                                475 White Horse Pike
                                                Collingswood, NJ 08107
                                                Telephone:  (856) 858-1770
                                                Facsimile:  (856) 858-7012
                                                Email: jshah@sfmslaw.com
                                                        nfinkelman@sfmslaw.com

James E. Miller
Karen M. Leser-Grenon
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
65 Main St.
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
          kleser@sfmslaw.com


Jayne A. Goldstein
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
1640 Town Center Circle
Suite 216
Weston, FL 33326
Telephone: (954) 515-0123
Facsimile: (954) 515-0124
Email: jgoldstein@sfmslaw.com

**Attorneys for Plaintiff and the Proposed Class**